OPINION OF THE COURT
Raymond E. Cornelius, J.
This action was commenced by the plaintiffs, Thomas A. Hanna and Tah Ltd., to recover the face amount of 18 checks, made payable to plaintiffs which had been deposited in their account at First National Bank of Rochester (FNBR), one of the defendants herein. Motions for summary judgment, pursuant to CPLR 3212, have now been made on behalf of the *3 plaintiffs and FNBR, and the same relief has been requested, in answering papers, by Fleetbank, the codefendant.
The 18 checks were each drawn on the account of Heavy Hitters, Inc., at Fleetbank, in the face amount of $3,423.33. In May 1991, as a result of a request from Heavy Hitters, Inc. that no stale dated checks be posted to its account, Fleetbank issued a special instruction requiring manual posting of checks to this customer’s account. The checks, which are the subject of this action, were dated between June 1, 1990 and October 31, 1991, and purportedly represent monthly rental payments, but were not deposited by the plaintiffs in their account at First National Bank of Rochester until November 8, 1991. At this point in time, 13 of the checks were "stale” because of having been dated at least six or more months prior to the date of deposit. The remaining five, most recent checks were dated June 30, July 30, August 21, September 30, and October 31, respectively, and although not "stale”, the first four of these checks each contained a notation that the check would be "void after thirty days”.
Following the deposit, in the total amount of $63,619.94, on November 8, 1991, which was a Friday, FNBR forwarded the 18 checks to Fleetbank, for collection, by use of the clearinghouse exchange. However, because of the upcoming weekend, as well as the fact that Monday, November 11, 1991, was a legal holiday, the clearinghouse exchange did not occur until 9:30 a.m. on November 12, 1991, which would have been the first business day following November 8, 1991. The 18 checks were included in one of three bundles, which were contained in a pouch, and were delivered to Fleetbank, by courier, between 11:00 a.m. and noon on Tuesday, November 12, 1991. A "shipment summary” was enclosed with the pouch, and this contained a summary of the total of each of the three bundles of checks contained therein. In addition, each of the bundles was accompanied by a "cash letter”, which consisted of a summary of the checks contained therein. The "cash letter” for the bundle, in which the 18 checks, in question, were included, indicated that it had been printed on Saturday, November 9, 1991, by FNBR.
Upon receipt on November 12, 1991, Fleetbank commenced to process the checks, which included the removal of rubber bands around each batch of checks and encoding the batch ticket matching the cash letter for the respective preencoded checks. During the afternoon of November 12, the checks, which had been placed in trays, were processed by Fleetbank’s *4 IBM 3890 Reader/Sorter. This machine performed a number of functions, including the endorsement of Fleetbank’s ABA routing number and date (NO’91’12) on the back of each check. Thereafter, during the evening of November 12, 1991, the information obtained by the Reader/Sorter was posted to the various accounts, but because of the special instructions of May 1991, the 18 checks, drawn by Heavy Hitters, Inc., were not posted and were placed in a separate "exception pull” tray until the following morning.
On the morning of November 13, 1991, a "Posted Reject Journal” was reviewed for the checks which had been rejected the previous work day and this disclosed that the 18 checks, which are the subject of this action, were required to be manually posted, rather than by machine. A further examination of the 18 checks indicated that 13 of these checks were "stale” because of having been dated six or more months prior to deposit. These checks were hand stamped "Stale Dated”, and ultimately placed in envelopes to be returned to FNBR by courier. The remaining five checks were manually posted to the account of Heavy Hitters, Inc.
On November 14, 1991, FNBR charged back the 13 checks, which totaled $44,503.29, to plaintiffs’ account and advised its customer that these checks had been dishonored as "Stale Dated” and assessed a $65 fee. Subsequently, on November 20, 1991, Fleetbank returned the five remaining checks. On the following day, November 21, 1991, FNBR advised plaintiffs that these checks had been dishonored because of "insufficient funds”, and in addition to a charge-back in the total amount of $17,116.65, assessed a $25 fee.
In regard to the responsibility of payor banks, such as Fleetbank, in the pending case, UCC 4-301 (1) provides as follows:
"(1) Where an authorized settlement for a demand item (other than a documentary draft) received by a payor bank otherwise than for immediate payment over the counter has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment (subsection (1) of Section 4-213) and before its midnight deadline it
"(a) returns the item; or
"(b) sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return.” *5 In 1962, UCC 4-302 was enacted (L 1962, ch 553) in order to set forth the rights of a customer in the event a payor bank fails to comply within the time limits prescribed by section 4-301. Insofar as the pending case is concerned, the relevant provisions of section 4-302 are as follows:
"In the absence of a valid defense * * * if an item is presented on and received by a payor bank the bank is accountable for the amount of
"(a) a demand item * * * in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline” (emphasis added).
In summary, a payor bank is accountable for the amount of a demand item, such as a check, which is retained "beyond midnight of the banking day of receipt without settling for it”, or alternatively, and notwithstanding such authorized settlement, the bank fails to pay, return the check, or send notice of dishonor until after its "midnight deadline”. Conversely, assuming that an authorized settlement has occurred before midnight of the banking day of receipt of the check, a payor bank may revoke this settlement and recover any payment by return of the check or, if unavailable, by sending written notice of dishonor or nonpayment. However, the check must be returned, or written notice of dishonor or nonpayment sent, before the bank has made final payment, as defined in subdivision (1) of UCC 4-213 and before expiration of the "midnight deadline”. In relevant part to the facts of the pending case, section 4-213 (1) (c) and (d) provides as follows:
"An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first: * * *
"(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
"(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.”
Further, the term "midnight deadline” is defined as "midnight on its next banking day following the banking day on which it receives the relevant item”. (UCC 4-104 [1] [h].)
In regard to all 18 checks, subject of the litigation, the *6 question, in the first instance, becomes whether or not there was an authorized settlement on November 12, 1991, which was the day of receipt by Fleetbank, and prior to midnight of that day. The term " '[sjettle’ means to pay in cash, by clearing house settlement, in a charge or credit or by remittance, or otherwise as instructed.” (UCC 4-104 [1] [1].) This same subsection provides that "[a] settlement may be either provisional or final”. As discussed in the official comment to this subsection, the term "settle” represents a new term in bank collection language, and has significance to bank deposits and collections covered by the provisions of article 4 (UCC 4-104, Comment 6). In the pending case, Fleetbank contends that the actions it took on November 12, 1991, including the name and date stamp placed on the checks, the processing by the Reader/Sorter and the computer determination that manual posting was required, constituted a provisional settlement. Accordingly, the bank advances the argument that it should be entitled to revoke this settlement, at least in regard to the first 13 checks, because final payment had not been made and the items were returned before its "midnight deadline” on November 13, 1991.
In this court’s opinion, the term "settle” implies more than commencing the initial processing of a check, which is all that occurred on November 12, 1991 at Fleetbank’s office. Although there may be an absence of decisional law defining settlement, there would appear to be embodied within the statutory concept, as a minimum, some form of payment, whether by cash, or in some other manner, such as a charge or credit. Such requirement is included within the language of the statute, itself, as well as the official comment to section 4-104 (1) (l), which states as follows: "The term 'settle’ is used as a convenient term to characterize a broad variety of conditional, provisional, tentative and also final payments of items. Such a comprehensive term is needed because it is frequently difficult or unnecessary to determine whether a particular action is tentative or final or when a particular credit shifts from the tentative class to the final class.” (UCC 4-104, Comment 6.) The official comment further cites examples of the types of settlement contemplated by use of the term. These would include payment in cash, debit or credit entries in accounts between banks, adjustment of balances through clearinghouses, or the forwarding of remittance instruments. In this case, there was no action taken by Fleetbank on November 12, 1991, which approximated any kind of payment *7 by credit, remittance or otherwise. If the term "settle” were defined to include some action less than a tentative payment of an item by, at least, a credit, there would be nothing to revoke, and the provision granting a payor bank the right to revoke a settlement and recover payment, as contained in UCC 4-301 (1), would be rendered meaningless.
In addition to the foregoing, Fleetbank failed to return, or send notice of dishonor or nonpayment, concerning the last five checks, before its "midnight deadline”. Again, "midnight deadline” refers to midnight of the banking day following receipt of an item, as distinguished from midnight of the day of receipt, which represents the time limit for settlement of an item. Indeed, the bank, in response to written interrogatories, stated that these five checks had not been paid or returned prior to midnight of November 13, 1991, and therefore, acknowledged that settlement had become final in regard thereto. Under such circumstances, and absent certain defenses, the payor’s bank delay is equivalent to final payment under UCC 4-213 (1) (d), and generally, summary judgment should be granted to a payee of a check for the face amount thereof. (SOS Oil Corp. v Norstar Bank, 76 NY2d 561 [1990].)
In fact, the five checks were not returned until November 20, 1991, and it would appear that Fleetbank had completed the process of posting of the five checks to the account of its customer, Heavy Hitters, Inc., which was the drawer. This would constitute final payment under UCC 4-213 (1) (c), and, in addition, would generally preclude the bank from revoking any provisional settlement pursuant to the provisions of UCC 4-301 (1).
Notwithstanding the failure to return, or send notice of dishonor or nonpayment before the "midnight deadline”, Fleetbank asserts that the plaintiff cannot be a holder in due course, as to the first four of the five checks, because of the notation "void after thirty days”. In response, plaintiffs correctly note that the status of the holder in due course should be determined as of the time of taking an instrument, as distinguished from the date of deposit. (See, UCC 3-302 [1].)
Fleetbank cites authorities, which have held that the provisions of UCC 4-213, relating to final payment of an item, do not necessarily preclude a bank from successfully recovering restitution against a party, which does not qualify a party as "a holder in due course, or a person who has in good faith changed his position in reliance on the payment”, pursuant to *8 UCC 3-418. (See, e.g., National Sav. & Trust Co. v Park Corp., 722 F2d 1303 [6th Cir 1983].) The court finds this reliance to be somewhat misplaced because the facts of the pending case involve the issue of settlement and payment under UCC article 4. Nevertheless, there is a decisional authority, both in the Federal courts and other jurisdictions, which, notwithstanding the provisions of sections 4-301 and 4-302, would bar a payee’s recovery of the face amount of an instrument if the payee was aware, at the time of presentment, that it would not be accepted or paid except by mistake. (See, Third Century Recycling v Bank of Baroda, 704 F Supp 417 [SD NY 1989]; United States Fid. & Guar. Co. v Federal Reserve Bank, 620 F Supp 361 [SD NY 1985].) These holdings are based upon equitable principles, which have been codified in UCC 1-103 as follows: "Unless displaced by the particular provisions of this Act, the principles of law and equity * * * shall supplement its provisions.” Indeed, some of the decisions, which do not involve section 4-301 or 4-302, but which permit restitution, notwithstanding payment, against someone other than a holder in due course, under section 3-418, for example, similarly rest upon principles of equity. (See, e.g., Morgan Guar. Trust Co. v American Sav. & Loan Assn., 804 F2d 1487 [9th Cir 1986].)
Certainly, as articulated by the Court of Appeals, the purpose of the "midnight deadline” is not "merely encouraging banks to process deposited instruments promptly,” but "the deadline plays the central role in 'firming up’ the provisional credit received by each transferor in the payee — depositary bank — intermediary bank chain.” (David Graubart, Inc. v Bank Leumi Trust Co., 48 NY2d 554, 562 [1979].) Accordingly, it would be appropriate, under most circumstances, to strictly construe the provisions of sections 4-301 and 4-302, and thereby permit recovery against a payor bank which has failed to meet its deadline for settlement and/or payment. However, this court is persuaded that the reasoning of the Federal courts, above cited, should be adopted by the State courts in New York, and that equity should prevent such recovery in the event that the payee, at the time of presentment, was aware that the checks would be dishonored except for a mistake. In the pending case, the plaintiffs, as payees, were certainly aware of this fact, based upon the "void after thirty days” language contained on the first four of the last five checks.
Fleetbank also contends that plaintiffs’ motion for summary *9 judgment, in regard to the last, and most recent check, which did not contain any restrictive language, should be denied because of the possibility of a question of fact as to whether or not plaintiffs had knowledge that this check would be dishonored. However, there is nothing contained in the record which would suggest such an issue of fact, and neither plaintiffs nor Fleetbank have opposed the respective motions for summary judgment based upon the request for additional discovery.
 Based upon the foregoing reasons, summary judgment should be granted to plaintiffs in the aggregate face amount of the first 13 of the 18 checks. It should be emphasized that although these checks were held longer than six months, and therefore, stale, this merely relieved the bank of an obligation to make payment of the check for that reason. (UCC 4-404.) Therefore, because of the discretionary nature of this provision, payment by bank of a stale dated check would not necessarily be made by mistake. Accordingly, there would be no basis for concluding that plaintiffs, as payees, should be aware that the checks would be dishonored for such reason. Similarly, summary judgment should be granted to plaintiffs for the face amount of the last and most recent check, but denied, and summary judgment granted to Fleetbank, dismissing the causes of action, related to the first four of the last five checks.
The right of FNBR, as a collecting bank, to charge back is governed, in relevant part, by the following provisions of UCC 4-212 (1): "If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer’s account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subsection (3) of Section 4-211 and subsections (2) and (3) of Section 4-213).” Once settlement became final, because of the failure of Fleetbank to settle the first 13 checks before midnight of November 12, 1991, and the failure to return the last check, before its "midnight deadline”, the right of FNBR to charge back was eliminated. (See, Fromer Distribs. *10 v Bankers Trust Co., 36 AD2d 840 [2d Dept 1971].) Accordingly, plaintiffs are entitled to summary judgment against FNBR for these items, but based upon the court’s ruling pertaining to the first four of the last five checks, in connection with Fleetbank’s liability, the motion for summary judgment against FNBR, relating to these four checks, should be denied.
As aforementioned, FNBR has also made a cross motion for summary judgment, but as pointed out by plaintiffs’ counsel, this bank had earlier made an unsuccessful motion for summary judgment, and thereafter filed an appeal. Counsel for FNBR represented that the appeal has not been pursued as of this date, and a cross claim has not been interposed against Fleetbank, in order to permit the latter to complete its investigation into the facts. Accordingly, the court will consider FNBR’s application in the nature of a motion to renew its motion for summary judgment. Although FNBR takes the position that plaintiffs’ motion for summary judgment should be denied, and further discovery conducted in order to explore the relationship between the plaintiffs, as well as Heavy Hitters, Inc., there is no indication that such discovery would change the ultimate result in this case, based upon the various provisions of the Uniform Commercial Code, as hereinbefore discussed.