SOS Oil Corp., Respondent-Appellant, v Norstar Bank of Long Island, Appellant-Respondent.

Second Department, December 4, 1989

### APPEARANCES OF COUNSEL

*Berkman, Henoch, Peterson, Kadin & Peddy (Kevin P. Simmons* of counsel), for appellant-respondent.

*Cole & Deitz (Joseph DiBenedetto* and *Jeanne M. Murphy* of counsel), for respondent-appellant.

### OPINION OF THE COURT

Per Curiam.

The issue in this case involves the liability of a bank for erroneously encoding a check deposited by a customer, and is one of first impression in the State.

Described as the most widespread technological advance in bank collections since the UCC was drafted *(see,* Clark, Bank Deposits, Collections and Credit Cards ¶ 10.5, at 10-8 [rev ed]), the encoding of checks with magnetic ink has become an integral part of the automation of modern banking. In this process, a bank, using magnetic ink, will encode the amount of the check on the deposited check itself. When that is done, the amount of the check, the identity of the payor bank, and the identity of the drawer-depositor can be "read" electronically. As a consequence of magnetic encoding, checks do not generally require manual attention for most of the check collection process *(see,* Bailey, Brady on Bank Checks § 19.2, at 19-3 [6th ed]; Clark, Bank Deposits, Collections and Credit Cards, *op. cit.;* 1 White and Summers, Uniform Commercial Code § 17-3, at 846-847 [practitioner's 3d ed]).

In the case before us, the plaintiff SOS Oil Corp. (hereinafter SOS) alleges four causes of action against the defendant Norstar Bank of Long Island (hereinafter Norstar). By virtue of its own encoding error, Norstar credited $25,000 to SOS's

account with Norstar, rather than $255,000, the face amount of the check. At the time, Conlo Services, Inc. (hereinafter Conlo) was doing business with SOS, whereby SOS supplied gasoline to Conlo, pursuant to a "running account," which entailed hundreds of thousands of dollars. Under this arrangement, Conlo would at various times deposit payments for gasoline supplied by SOS directly into SOS's Norstar checking account. SOS states that to speed up payment, it opened this account at the Norstar branch where Conlo had its account. Norstar therefore acted as depository bank, payor bank, and drawee of the check. On July 9, 1984, Conlo deposited the subject check into SOS's Norstar account.

Neither party disputes that both the check and the deposit slip clearly and unambiguously stated the deposited amount as $255,000. Nonetheless, SOS's July 31, 1984 statement of account from Norstar showed a credit to SOS's account of only $25,000, while Conlo's statement of account of the same period showed a corresponding debit of only $25,000. Norstar thus made a $230,000 error to SOS's disadvantage.

It was not until October 31, 1985, that SOS brought the error to Norstar's attention and demanded the unpaid balance of $230,000. However, by September 26, 1984 Conlo's account was closed. Subsequently, Conlo went out of business.

The first cause of action alleged in SOS's May 2, 1986 amended complaint asserted that Norstar was accountable under the UCC for the full face value of the check because it had not dishonored it. The second cause of action alleged breach of contract. The third cause of action alleged negligence in erroneously encoding the check, and the fourth cause of action alleged gross negligence and/or recklessness and demanded punitive damages.

In its answer, Norstar denied liability and asserted as an affirmative defense, *inter alia,* that SOS's recovery was barred by a clause contained in an agreement signed by a corporate representative on May 21, 1984, at the time the SOS account was opened. This agreement was embodied in a "corporate resolution" adopted by SOS's board of directors. The clause in question provides in pertinent part that unless SOS notified Norstar in writing of any claimed errors within 14 days after delivery or mailing of any statement of account, the statement of account would be considered correct for all purposes and Norstar would not be liable for any errors.

Thereafter, Norstar moved for summary judgment contend-

ing that the agreement was a complete defense to the action. SOS cross-moved for summary judgment on the first cause of action alleged in its amended complaint which sought recovery of the full value of the check under the UCC.

The court granted SOS's cross motion for summary judgment on its first cause of action holding that UCC 4-302 imposes strict liability on a payor bank to act on a check before midnight of the banking day of receipt. It granted Norstar's motion for summary judgment to the extent of dismissing the second, third, and fourth causes of action. The court held that the second and third causes of action for breach of contract and negligence, respectively, were defeated by the 14-day waiver of liability clause contained in the May 21, 1984 agreement between Norstar and SOS. The fourth cause of action for gross negligence and punitive damages was dismissed on the ground that it did not state a valid cause of action because the encoding error which formed the basis of the action did not constitute "gross" negligence.

On appeal, Norstar contends that the court erred in finding it liable under UCC 4-302 because that section does not apply to encoding errors. Norstar asserts that its liability must depend instead on general principles of law, equity, and generally accepted standards of commercial behavior by which it would not be precluded from asserting its affirmative defenses. We hold that UCC 4-302 is applicable and we therefore affirm the grant of summary judgment to SOS on its first cause of action.

Article 4 of the UCC governs the relationship between a bank and its customer. UCC 4-302 covers an essential aspect of that relationship and, indeed, the system of commerce as a whole. The purpose of this section is to speed up the collection of checks in the banking system and to inject certainty into the check collection process *(see, Starcraft Co. v Heck Co.,* 748 F2d 982; *Met Frozen Food Corp. v National Bank,* 89 Misc 2d 1033, 1038). UCC 4-302 provides:

"In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

"(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond mid-

night of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

"(b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents".

This section must be read in conjunction with UCC 4-213 (1) which recites the rules for ascertaining when an "item" *(see,* UCC 4-104 [1] [g]) is "finally paid", and provides that upon final payment the payor bank shall be accountable for the amount of the item *(see, Fromer Distribs. v Bankers Trust Co.,* 36 AD2d 840).

It has consistently been held that UCC 4-302 imposes strict liability and that the duty to account is measured by the face amount of the instrument. "A failure to return is, in effect, payment of the item (see Uniform Commercial Code, § 4-213, subd [1], par [d])". *(Met Frozen Food Corp. v National Bank, supra,* at 1037; *see also, Bank Leumi Trust Co. v Bank of Mid-Jersey,* 499 F Supp 1022, *affd* 659 F2d 1065; *Georgia R. R. Bank & Trust Co. v First Natl. Bank & Trust Co.,* 139 Ga App 683, 229 SE2d 482, *affd* 238 Ga 693, 235 SE2d 1.) We reject Norstar's contention that UCC 4-302 does not apply to a situation in which a payor bank "pays" the item, but in an erroneous amount. The bank may not avert the application of the statute by paying a fraction of the amount due. Equally unavailing is Norstar's argument that UCC 4-302 does not apply to encoding errors. Liability under this section is fixed by the fact of retention of the check, and there is nothing in the statute to suggest an exclusion for encoding errors. Once the item is retained, the bank is liable for the full amount *(see, Bank Leumi Trust Co. v Bank of Mid-Jersey, supra; Georgia R. R. Bank & Trust Co. v First Natl. Bank & Trust Co., supra).*

Moreover, UCC 4-302 permits only limited defenses to a payor bank's accountability, and clearly intends to create a statutory liability independent of general common-law and equitable defenses not stated in UCC article 4. Therefore, UCC 1-103 is not helpful to Norstar, insofar as it otherwise permits the use of common-law and equitable principles to supplement the code *(see, Bank Leumi Trust Co. v Bank of Mid-Jersey, supra; State & Sav. Bank v Meeker,* 469 NE2d 55 [Ind]; *cf.,*

*Hechter v New York Life Ins. Co.,* 46 NY2d 34 [construing UCC 3-419]; *Bank Leumi Trust Co. v Bally's Park Place,* 528 F Supp 349).

■ Turning to the plaintiff's cross appeal, we find that appellate review thereof is made unnecessary by the doctrine of mootness *(see, Habe v Triola,* — AD2d — [2d Dept, Oct. 10, 1989]). "A matter is moot when a determination is sought on a matter which, if rendered, could not have any practical effect on the existing controversy" *(Lighting Horizons v Kahn & Co.,* 120 AD2d 648, 649). The plaintiff's cross appeal seeks review of that portion of the order and judgment which awarded summary judgment to the defendant dismissing the second and third causes of action, which are based on the theories of breach of contract and negligence, respectively. The first, second, and third causes of action all sought the identical relief of recovery of the unpaid balance of the check, $230,000, albeit under different theories. The plaintiff's brief on appeal does not challenge that portion of the order and judgment which granted summary judgment dismissing the fourth cause of action which included a claim for punitive damages based upon gross negligence and/or recklessness. Inasmuch as the plaintiff is entitled to but a single recovery of the $230,000 unpaid balance sought under the first three causes of action, and the court correctly imposed liability for that amount under the UCC strict liability theory contained in the first cause of action, appellate review of the propriety of the dismissal of the second and third causes of action would not alter the result or directly affect a substantial right or interest of the parties *(see, e.g., Habe v Triola, supra; Matter of Hearst Corp. v Clyne,* 50 NY2d 707; *Barrett Foods Corp. v New York City Bd. of Educ.,* 144 AD2d 410). Accordingly, the cross appeal is dismissed as academic.

KUNZEMAN, J. P., RUBIN, EIBER and ROSENBLATT, JJ., concur.

Ordered that the order and judgment is affirmed insofar as appealed from; and it is further,

Ordered that the cross appeal is dismissed as academic; and it is further,

Ordered that the plaintiff is awarded costs.