OPINION OF THE COURT
Kaye, J.
Defendant, Norstar Bank of Long Island, in paying a $255,000 check, erroneously debited the drawer and credited the payee (plaintiff, SOS Oil Corporation) with $25,000 instead of the face amount of the check. The bank’s error went unde *565 tected for more than a year, during which time the drawer closed its account with Norstar and ceased doing business. The issue before us is whether SOS was correctly awarded summary judgment, under UCC 4-302, for the $230,000 discrepancy, or whether the bank’s defenses gave rise to a triable issue of fact.
The following facts are uncontested. SOS during 1984 had an ongoing arrangement to sell wholesale petroleum products to Conlo Services Corporation. Owing to the large volume of sales, a "running account” was maintained between SOS and Conlo. To facilitate Conlo’s payments, SOS opened a checking account with Norstar, where Conlo also maintained an account, and Conlo deposited its payments directly into SOS’s account, apparently retaining the deposit slips. Norstar thus functioned both as payor bank (UCC 4-105 [b]) in accepting presentment of Conlo’s checks for payment, and as depositary bank (UCC 4-105 [a]) in accepting deposits of Conlo checks into SOS’s account, although it performed its separate functions without regard to the fact that it was doing both. This appeal centers on Norstar’s role as payor bank in paying Conlo’s check, but the unusual facts call upon us also to take note of its role as depositary bank in encoding the check.
In connection with opening its account, SOS completed and adopted a "Corporate Resolution” on a Norstar form, which among other things named the SOS officers authorized to make loans and withdrawals on behalf of the corporation. The resolution began with a declaration that SOS designated Norstar "as a depository,” and in paragraph 9 it established notification and time requirements for bringing suit against the bank for claimed errors in the customer’s statements of account. Unless written notification were given to the bank within 14 days and suit commenced within one year of delivery of a statement, according to paragraph 9 of the "Corporate Resolution” the statement as rendered would be considered correct for all purposes and Norstar would not be liable to SOS for any errors in that record.
On July 9, 1984, Conlo deposited into SOS’s account its check drawn on its account at Norstar, payable to SOS, in the amount of $255,000. The amount was correctly indicated on the deposit slip prepared by Conlo as well as on the check itself, both in numbers and in script. Norstar then encoded the check mechanically — meaning the bank wrote the amount on the check in computer-readable magnetic ink, which per *566 mitted automated processing (see generally, 1 White & Summers, Uniform Commercial Code § 17-3, at 846 [Practitioner’s-3d ed 1988]; Bailey, Brady on Bank Checks § 19.2 [6th ed 1987]; Clark, Bank Deposits, Collections and Credit Cards |[ 10.5, at 10-8 [rev ed 1981]). Instead of $255,000, however, Norstar mistakenly encoded the amount of the check as $25,000, which amount was then credited to SOS and debited to Conlo. The $25,000 deposit appeared on SOS’s July 31, 1984 statement from Norstar.
Months later SOS discovered the error, when a dispute arose with Conlo as to how much of their "running account” balance had been paid, whereupon SOS asked Norstar for a copy of the deposit slip and check for the July 9 transaction. On October 31, 1985, SOS brought the error to Norstar’s attention and demanded the $230,000 difference. By that time, Conlo’s account at Norstar had been closed for more than a year and Conlo had gone out of business.
Norstar refused to pay, resulting in the present complaint on alternative theories of Norstar’s UCC 4-302 liability as payor bank, breach of contract as depositary bank, and negligence in underencoding the check. Norstar denied liability and asserted both the notification requirements of the "Corporate Resolution” and defenses of estoppel, account stated, contributory negligence and illegality of the underlying SOSConlo transaction.[1] The trial court granted plaintiff’s cross motion for summary judgment on its UCC 4-302 cause of action, concluding that neither the bank’s contractual defense nor its remaining defenses were valid against that statutory claim. The Appellate Division affirmed, as do we.
Uniform Commercial Code § 4-302
The Uniform Commercial Code imposes distinct accountability on payor banks, providing in section 4-302 that: "In the absence of a valid defense such as breach of a presentment warranty (subsection [1] of Section 4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of * * * a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not *567 also the depositary bank, retains the item beyond midnight of the hanking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline”.
Absent certain defenses, a payor bank, even when also functioning as a depositary bank, may by the operation of UCC 4-302 be held accountable to a payee for the amount of a check presented for immediate payment when it fails to pay, return or send notice of dishonor before the midnight deadline —that is, midnight of the next banking day following the banking day on which the bank receives the check (UCC 4-104 [1] [h]). A payor bank’s delay is thus tantamount to final payment of the item according to its tenor (see, UCC 4-213 [1] [d] and 4-301; see also, Bank Leumi Trust Co. v Bank of Mid-Jersey, 499 F Supp 1022, affd 659 F2d 1065 [3d Cir]; Third Century Recycling v Bank of Baroda, 704 F Supp 417 [SD NY]; Clark, op. cit, ]f 5.02 [2], at 5-63 [1990]). The statute makes the bank fully accountable whether it has paid nothing or — as here— something less than the face amount of the instrument (see, Georgia R. R. Bank & Trust Co. v First Natl. Bank & Trust Co., 139 Ga App 683, 229 SE2d 482, affd 238 Ga 693, 235 SE2d l).[2]
The midnight deadline rule of UCC 4-302 places a heavy burden on payor banks — one that exceeds that of depositary or collecting banks, which can reduce their obligation by the amount that could not have been recovered had ordinary care been used (see, UCC 4-103 [5]; see also, 6 Hawkland, Leary & Alderman, UCC Series § 4-302:04, at 69 [art 4]). The heavy burden imposed by UCC 4-302 serves important commercial purposes: it expedites the collection process by motivating banks to process instruments quickly, and it firms up the provisional credits received by each bank in the collection chain, thereby supplying a key element of certainty in commercial paper transactions (see, David Graubart, Inc. v Bank Leumi Trust Co., 48 NY2d 554, 562). By requiring that deficiencies in a drawer’s account be determined swiftly, the midnight deadline rule is a vital part of the payor bank’s role *568 in assuring the integrity of commercial paper (see, 1 White & Summers, op. cit., § 17-2, at 825-827).
In the present case, it is undisputed that Conlo’s check and deposit slip were in all respects regular and accurate, that the only actual mistake was Norstar’s, and that Norstar retained the check past its midnight deadline. Under UCC 4-302, Norstar is therefore accountable for the face amount of the check. The only dispute is whether Norstar can by its defenses avoid accountability under UCC 4-302. We agree with both the trial court and the Appellate Division that the bank cannot, and conclude that summary judgment was properly awarded to SOS.
The "Corporate Resolution” Defense
Norstar’s primary contention on this appeal is that the "Corporate Resolution” requires reversal of the award of summary judgment in favor of SOS. The bank urges that the "Corporate Resolution” defines the terms of its relationship with SOS, that SOS agreed upon prompt written notification of any claimed error in its statements as a condition precedent to suit, and that SOS’s failure to provide notice of the $230,-000 claimed error for more than a year precludes recovery.
As in the interpretation of any document, we look for the parties’ intent within the four corners of the instrument, reading any ambiguity against the drafter — in this case Nor-star. We are also mindful that interpreting the banking form as Norstar advocates could in practical effect alter the scheme of liability under the UCC (see, 1 White & Summers, op. cit., § 18-2, at 872; see also, Sunshine v Bankers Trust Co., 34 NY2d 404, 410), and for that additional reason we read Norstar’s form strictly against the bank.
Applying those standards, we conclude that the notification requirement of paragraph 9 does not apply here. In view of that conclusion, we are not called upon to decide whether the time limitations of that paragraph could ever be a valid restriction on a customer’s claim (see, Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co., 74 NY2d 340, 349, n 2).
Paragraph 9 in relevant part reads: "Unless the Corporation shall notify the Bank in writing within fourteen calendar days of the delivery or mailing of any statement of account and cancelled check, draft or other instrument for the payment of money (hereinafter referred to as Instrument’) of any claimed *569 errors in such statement, or that the Corporation’s signature upon any such returned Instrument was forged, or that any such Instrument was made or drawn without the authority of this Corporation or not in accordance with the signature arrangement set forth in paragraph 2(a) hereof, or that it was raised or otherwise altered, or unless this Corporation shall notify said Bank in writing within six months after the delivery, or mailing of any such Instrument that any endorsement was forged, improper, made without the authority of the endorser or missing, said statement of account shall be considered correct for all purposes and said Bank shall not be liable for any payments made and charged to the account of the Corporation or for any other errors in the statement of account as rendered to it.”
In support of its position Norstar points to the embracive language of paragraph 9 requiring timely written notice of "any claimed errors” in statements of account, the absence of which renders statements correct "for all purposes,” and immunizes the bank from liability "for any payments made and charged to the account of the Corporation or for any other errors in the statement of account as rendered to it.” (Emphasis added.) Those words, however, cannot be taken out of context. Beginning with the opening paragraph, the form devised by Norstar designates the bank "as a depository” of the corporation, and evidences an intent that it should govern the bank’s role as depositary bank paying items drawn on its customer’s account.
Paragraph 9, for example, provides that the corporation must give written notice within 14 days of delivery of "any statement of account and cancelled check, draft or other instrument for the payment of money * * * of any claimed errors in such statement, or that the Corporation’s signature upon any such returned Instrument was forged, or that any such Instrument was made or drawn without the authority of this Corporation or not in accordance with the signature arrangement set forth in paragraph 2(a) hereof, or that it was raised or otherwise altered.” Moreover, the paragraph specifies that no action can be brought against the bank to recover payment of any instrument on which any signature or endorsement "has been forged or was improper, or which was drawn, made, accepted or endorsed without the authority of the Corporation or the endorser” or not in accordance with signature arrangements with the bank unless there has been both the 14-day written notification and commencement of *570 suit within one year "after the date when such statement and cancelled Instruments were delivered or mailed to the Corporation in the case of an authorized signature or any alteration on the face or back of the item or one and one-half years in the casé of an unauthorized endorsement.”
By its very language, paragraph 9 plainly is directed to situations where Norstar is acting as depositary and the customer receives both a statement of account and the underlying instruments of payment, such as checks, that are the basis for the claim of error — not the situation at issue here.
Other sections of the "Corporate Resolution” similarly support that conclusion — for example, the paragraph dealing with stop payment orders, the paragraph eliminating the bank’s duty to inquire regarding the use of funds drawn on the customer’s account, and the several paragraphs relating to authorized signatories. Indeed, Norstar’s argument that the time requirements are a permissible variation of SOS’s obligation to examine its bank statements under UCC 4-406 itself reveals that the resolution is concerned with payments made out of the customer’s account, where the customer will be able to compare the debit entries against the underlying items. UCC 4-406 applies "[w]hen a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries” (see, UCC 4-406, official comment 7) — quite different from the present situation.
Thus, reading the "Corporate Resolution” strictly against the bank, we agree with the trial court and Appellate Division that the limitations of paragraph 9 are inapplicable here, and that this defense was properly rejected as a matter of law.
The Bank’s Remaining Defenses
Nor can Norstar avoid liability here by resort to the defenses of estoppel, account stated, contributory negligence or illegality of the underlying transaction.
Norstar urges that such defenses are allowed pursuant to UCC 1-103, which states that "[ujnless displaced by the particular provisions of [the] Act, the principles of law and equity, including * * * estoppel * * * shall supplement its provisions.” As Norstar has failed to establish any basis for the remaining defenses it has asserted, we need not reach SOS’s broader argument — addressed by the Appellate Division — that only UCC defenses would be available in a claim for breach of *571 a bank’s statutory duty under UCC 4-302 (see, 152 AD2d 223, 227).
The primary common-law defense asserted by Norstar is estoppel. Norstar claims that SOS’s failure to report the bank’s error for more than a year, during which time Conlo closed its account and went out of business, mandates that SOS be equitably estopped from recovering against Norstar. But such a defense, if allowable at all under UCC 4-302, would require some factual showing that the bank’s failure to meet its midnight deadline was a consequence of justifiable reliance on a representation, action or failure to act on the part of SOS (see, Chrysler Credit Corp. v First Natl. Bank, 746 F2d 200, 206-207 [3d Cir]). There is no such showing here. Even looking at Norstar’s role as depositary rather than payor, there is no showing that any action by SOS in any way contributed to Norstar’s encoding error (see, e.g., Bank Leumi Trust Co. v Bally’s Park Place, 528 F Supp 349).
Norstar’s defense of account stated, similarly, raises no issue of fact relating to its UCC 4-302 liability. Norstar relies on a pre-UCC case — Potts & Co. v Lafayette Natl. Bank (269 NY 181) — concerned with a customer’s duty to examine its statement and underlying checks and report any errors to its depositary bank, and is plainly inapposite in a suit by a payee against the payor bank under UCC 4-302. Furthermore, an account stated defense (if not entirely superseded by UCC art 4) would not affect Norstar’s responsibility as depositary bank in encoding Conlo’s check, but would at best be addressed to the issue of items properly paid out of SOS’s account — which are not questioned here.
The importation of comparative negligence into the UCC has been expressly rejected by this Court (see, Putnam Rolling Ladder v Manufacturers Hanover Trust Co., 74 NY2d 340, supra). Norstar’s last proffered defense — that the underlying transaction was illegal in that SOS gave no consideration for the $255,000 check — even if supported by any factual showing —could have no effect on Norstar’s liability for failure to meet its midnight deadline, or even for the error in encoding Conlo’s check. Thus, all of Norstar’s defenses were correctly rejected as a matter of law.
Finally, the UCC objectives of promoting certainty and predictability in commercial transactions are served by the result reached here. It has been estimated that overwhelmingly all items first presented are paid (6 Hawkland, Leary & *572 Alderman, op. cit., § 4-302:05, at 84); moreover, a payor bank ordinarily can minimize or avoid the remaining exposure by passing liability upstream to the bank that actually made the mistake (see, Bailey, op. cit., § 19.5, at 19-9; First Natl. Bank v Fidelity Bank, 724 F Supp 1168 [ED Pa], affd 908 F2d 962 [3d Cir]; but see, Bank Leumi Trust Co. v Bank of Mid-Jersey, supra). In the present case, of course, the bank suffering the loss happens also to be the one that made the mistake in the first instance.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. In December 1987 Norstar also commenced a third-party action against Conlo, which has not answered. That action is not before us on this appeal.

. The UCC 4-302 defenses, which explicitly include breach of a presentment warranty, may allow the payor bank to pass liability on to the depositary bank that made the encoding error (see, First Natl. Bank v Fidelity Bank, 724 F Supp 1168 [ED Pa]). In this case, because Norstar functioned as payor bank and depositary bank, we do not reach the issue of interbank liability.