[620 NYS2d 863]

Thomas A. Hanna et al., Respondents-Appellants, v First National Bank of Rochester et al., Appellants-Respondents.

Fourth Department, December 23, 1994

APPEARANCES OF COUNSEL

*Lacy, Katzen, Ryen & Mittleman,* Rochester *(Sally A. Smith* and *Leslie W. Kernan, Jr.,* of counsel), for First National Bank of Rochester, appellant-respondent.

*Harris, Beach & Wilcox,* Rochester *(Jeffrey W. Baker* and *Douglas Foss* of counsel), for Fleet Bank of New York, appellant-respondent.

*Sean T. Hanna,* Webster, for respondents-appellants.

**OPINION OF THE COURT**

PINE, J.

This appeal raises two issues of first impression for this

Court involving the respective rights and duties of a payor bank, a depositary bank, and a payee of a demand item under the Uniform Commercial Code. The first issue involves the effect of a payor bank's failure to meet the first of two midnight time limits in UCC 4-302 (a) when that bank timely returns or makes final payment of a demand item by the second midnight time limit. The second issue involves a payor bank's alleged right to restitution from a payee when that bank mistakenly makes final payment of a demand item pursuant to UCC 4-213. For reasons that follow, we hold that failure to comply with the first of the two midnight time limits (the midnight rule) with respect to a demand item does not render a payor bank accountable for the amount of that demand item if the payor bank timely returns or makes final payment of the item by the second midnight time limit (the midnight deadline). We further hold that a payor bank is not entitled to restitution from a payee when it mistakenly makes final payment of a demand item pursuant to UCC 4-213.

I

Plaintiffs commenced this action seeking payment of 18 rent checks, totaling over $61,000, deposited in their account at defendant First National Bank of Rochester (FNBR) and drawn on the account of their tenant, Heavy Hitters, Inc. (Heavy Hitters), at defendant Fleetbank (Fleet). The dates on the checks ranged from June 1, 1990 to October 31, 1991, but plaintiffs did not deposit them until November 8, 1991.

Thirteen of the checks were returned unpaid to FNBR by Fleet as stale dated; five checks were paid but were subsequently returned by Fleet for insufficient funds. FNBR charged back to plaintiffs the total amount of those checks plus fees.

Plaintiffs moved and each defendant cross-moved for summary judgment. Supreme Court granted plaintiffs' motion against both defendants on the first 13 and the last of the 18 checks and granted defendants' cross motions on the remaining four checks (159 Misc 2d 1, 9). We conclude that defendants are entitled to summary judgment on the first 13 checks and that plaintiffs are entitled to summary judgment on the last five checks.

II

Resolution of the first issue requires interpretation of UCC 4-302 (a). That section provides that, in the absence of a

valid defense, a payor bank is accountable for the amount of a demand item received by it "whether properly payable or not" if the payor bank either retains the item beyond midnight of the banking day of receipt without settling for it (the midnight rule) or fails to pay or return the item or send notice of dishonor "until after its midnight deadline" (midnight of the next banking day following receipt of the item [UCC 4-104 (1) (h)]).

It is undisputed that Fleet paid five of the checks and returned the remaining 13 by the midnight deadline. Plaintiffs contend that Fleet failed to comply with the midnight rule and is accountable, therefore, for the total amount of the 18 checks pursuant to UCC 4-302 (a). Fleet contends that it complied with the midnight rule by provisionally settling for those checks on November 12.

The record is insufficient to determine whether Fleet made a timely provisional settlement, as authorized by UCC 4-104 (1) (l) (see also, UCC 4-104, Comment 6). We hold, however, that such determination is unnecessary because Fleet's compliance with the midnight deadline constitutes a complete defense to any failure to comply with the midnight rule.

UCC 4-302 provides that, "[i]n the absence of a valid defense such as breach of a presentment warranty * * * settlement effected or the like" (emphasis added), a payor bank is accountable for the amount of a demand item other than a documentary draft for failing to meet either midnight time limit. The importance of the midnight deadline in promoting certainty in banking relationships is obvious (see, SOS Oil Corp. v Norstar Bank, 76 NY2d 561, 567-568). The importance of the midnight rule, however, is less obvious. If that time limit is not met but the item is settled for by the midnight deadline, the damages would be one day's interest (see, 6 Hawkland, Leary & Alderman UCC Series § 4-302:04, at 79). Plaintiffs argue that, if the midnight rule is violated, damages under UCC 4-302 would consist of the amount of the item even if the item is dishonored or returned by the midnight deadline.

There appear to be no cases involving such facts. A treatise discussing that issue concludes that compliance with the midnight deadline by timely return of the item should be a complete defense to the failure to comply with the midnight rule.

"Where a timely return has been made, there is a serious question whether the accountability proposed by the first midnight rule should be imposed at all. The issue could be phrased another way, namely could a timely return by the midnight deadline be considered a permitted defense to all suits for accountability for missing the provisional settlement on the first deadline? Consider the situation when a payment is made. Absent an insolvency of the payor bank, the only damage caused by a failure to make a provisional settlement by the first midnight [rule] where a payment is made before the expiration of the full midnight deadline, is the loss of one day's use of the funds by the bank in whose favor the settlement should have been made. Assuming a $1,000,000 cash letter and a 10% rate for the use of money, one day's delay amounts to $275. For the failure to supply that sum a penalty of $1,000,000 seems unduly harsh. Where the item was paid and a settlement made by the next day, the payor bank, if sued, could probably defend on the basis of the words 'settlement effected' in the preamble to UCC section 4-302. * * *

"[T]he true midnight deadline rule presents another problem where there has been a failure to make a provisional settlement, but a timely return of a presented item has been made. Here there is no express language in the preamble to UCC subsection 4-302 (a) upon which the payor bank may found a claim of nonliability, unless the courts will decide that the situation is covered by the words 'or the like' in the preamble to the section. We point out, in a following subsection, an application of the rule of eiusdem [sic] generis to the words 'breach of warranty or settlement effected' could cause them to encompass any defense the effect of which is to say either 'I've already paid the item' (settlement effected), or 'If I had paid you I could get it back' (breach of warranty). Hence a timely return should, in the case of a demand item other than a documentary draft, be a complete defense to the first midnight rule as it would to the midnight deadline rule" (6 Hawkland, Leary & Alderman UCC Series § 4-302:02, at 66-67).

That analysis is persuasive. We hold that a defense of "timely return effected" is similar to the defense "settlement effected," and is within the statutory language "or the like" found in the preamble to UCC 4-302 (a). Thus, Fleet, the payor bank, is not accountable for the amount of any of the checks on the basis that it failed to comply with the midnight rule in UCC 4-302 (a). It is not liable at all on the first 13 checks

because it returned them before the midnight deadline. It effected settlement on the last five checks so the midnight rule does not affect its accountability for them. A separate issue with respect to the last five checks is discussed *infra*.

Because FNBR's liability depends on Fleet's liability and Fleet is not liable, FNBR is not liable to plaintiffs for any failure by Fleet to comply with the midnight rule.

### III

▮ The remaining issue is whether Fleet nevertheless became liable for the last five checks when it posted them to Heavy Hitters' account, thereby making final payment *(see,* UCC 4-213 [1] [c]).

Supreme Court permitted restitution to defendants on the first four of those checks because they bore the restriction "VOID AFTER 30 DAYS". The court found, based on that restrictive language, that plaintiffs knew when they deposited those checks beyond the 30-day deadline that they would be dishonored unless the bank made a mistake. The record shows that the last check also bore the same restrictive language but that it was deposited within 30 days. The court found that there was no showing that plaintiffs were aware that the check would be dishonored when they deposited it, and, in effect, concluded that equitable principles did not absolve Fleet from responsibility for its error in posting that check by mistake. In drawing a distinction between the 14th through 17th checks and the 18th check, the court relied on UCC 1-103, which provides that, "[u]nless displaced by the particular provisions of [the UCC], the principles of law and equity * * * shall supplement *its provisions.*" The court also relied on a Federal case that recognizes a bank's right to restitution against a payee with knowledge that checks deposited were bad *(see, Morgan Guar. Trust Co. v American Sav. & Loan Assn.,* 804 F2d 1487, *cert denied* 482 US 929).

Fleet argues on appeal that, "not only were plaintiffs not holders in due course when they presented the four checks, but because they had every reason to know that [Fleet] would (or should) dishonor them, it would be inequitable to allow such a payee to benefit from [Fleet's] mistake."

The court properly found that plaintiffs' status as holders in due course is determined at the time plaintiffs took the instruments *(see,* UCC 3-302 [1]), not when they presented them. We reject Fleet's remaining argument that the equities

weigh in Fleet's favor and thus that we should permit restitution. According to Fleet's attorney, the last five checks were returned for insufficient funds; the return of the first four of those five checks apparently was not based on the fact that they bore the restriction "VOID AFTER 30 DAYS."

We conclude that Fleet became liable for the last five checks under UCC 4-213 (1) (c) when it posted them to Heavy Hitters' account. It is undisputed that Fleet made final payment on the last five checks and that the Uniform Commercial Code does not provide for restitution in a case of mistaken final payment by a payor bank to a holder in due course (see, UCC 3-418; 5 Hawkland, Leary & Alderman UCC Series § 4-213:06, at 547). Thus, Fleet necessarily argues that the right to restitution is based on equitable principles outside the UCC. Although there are cases to support that position (see, e.g., *Morgan Guar. Trust Co. v American Sav. & Loan Assn.*, 804 F2d 1487, *cert denied* 482 US 929, *supra*), we reject it (see, e.g., *Bank Leumi Trust Co. v Bank of Mid-Jersey*, 499 F Supp 1022, 1027, *affd* 659 F2d 1065).

In *SOS Oil Corp. v Norstar Bank* (152 AD2d 223, *affd* 76 NY2d 561, *supra*), the Court held that a payor/depositary bank that erroneously debited the drawer and credited the payee $25,000 instead of $255,000 was liable under UCC 4-302. The Appellate Division, Second Department, accepted SOS's argument that only UCC defenses are available to a bank in an action for breach of that bank's statutory duty under UCC 4-302; it held: "Moreover, UCC 4-302 permits only limited defenses to a payor bank's accountability, and clearly intends to create a statutory liability independent of general common-law and equitable defenses not stated in UCC article 4. Therefore, UCC 1-103 is not helpful to Norstar, insofar as it otherwise permits the use of common-law and equitable principles to supplement the code" (*supra,* at 227). The Court of Appeals affirmed on a different ground; it concluded that Norstar "failed to establish any basis" for its various defenses, which included an estoppel defense, and therefore found it unnecessary to reach SOS's argument (76 NY2d 561, 570-571, *supra*).

Although it was not addressed by the Court of Appeals, we agree with the reasoning of the Second Department and conclude that, if only limited defenses are available to the payor bank when it has failed to act, there is no reason to permit the payor bank to reach outside the Code for equitable defenses where, as here, the payor bank acted mistakenly.

Fleet paid the first four of the five checks despite their restrictive language and, as conceded by Fleet's attorney, paid all five checks despite insufficient funds in Heavy Hitters' account to cover them. For the sake of certainty in commercial transactions *(see, SOS Oil Corp. v Norstar Bank,* 76 NY2d 561, 567-568, *supra)* and in the absence of a UCC provision to the contrary, Fleet should be bound by that mistake. Plaintiffs are entitled to summary judgment on the last five checks against both defendants. FNBR's right to charge back terminated when Fleet's settlement for those checks became final *(see,* UCC 4-212 [1]; *Fromer Distribs. v Bankers Trust Co.,* 36 AD2d 840; *cf., Bank of N. Y. v Asati, Inc.,* 184 AD2d 443). Any issues concerning the rights between Fleet and FNBR are not before this Court; the parties stipulated that FNBR reserved the right to present any cross claims against Fleet.

We reject the contention that plaintiffs are entitled to attorney's fees, costs and disbursements based on Fleet's alleged bad faith.

### IV

Accordingly, the order should be modified by reversing the award of summary judgment to plaintiffs on the first 13 checks in the first ordering paragraph and granting defendants' cross motions for summary judgment on those checks, and by reversing the award of summary judgment to defendants on the first four of the last five checks in the second ordering paragraph and granting plaintiffs' motion for summary judgment on those checks. The order otherwise should be affirmed.

GREEN, J. P., BALIO, CALLAHAN and BOEHM, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by PINE, J.