OPINION OF THE COURT
 

 Simons, J.
 

 These two unrelated appeals involve claims by payees to recover on checks dishonored by the payor banks and address the liability imposed on a payor bank by UCC 4-302 (a). Specifically, they raise the questions whether (1) a payor bank’s timely return or dishonor of an item by midnight of the day following its receipt is a defense to the bank’s failure to settle the item on the day it was received by the payor bank; (2) a payor bank that has returned checks after its midnight deadline will be relieved of liability when the depositary bank subsequently debits its depositor’s account in violation of UCC 4-212 (1); and (3) equitable considerations will relieve a bank of liability for its failure to timely dishonor a check when the check was presented by a payee who was aware that it would be paid only if the bank made a mistake.
 

 For the reasons which follow, we conclude that the judgment in
 
 Hanna
 
 should be modified to grant summary judgment to plaintiffs and defendant depositary bank, First National Bank of Rochester, and, in the second appeal, that the judgment in favor of plaintiff
 
 A.K.S. Jewelry
 
 should be affirmed.
 

 I
 

 A
 

 In
 
 Hanna,
 
 plaintiffs Thomas Hanna and TAH Ltd. are the payees of 18 checks drawn on an account of Heavy-Hitters Inc. at defendant Fleet Bank. The checks, each in the amount of $3,423.33, were monthly rent checks payable to plaintiffs for the period June 1, 1990 through October 31, 1991. They were
 
 *113
 
 deposited by plaintiffs into their account at defendant First National Bank of Rochester on November 8, 1991. First National provisionally credited the plaintiffs’ account for the full amount of the checks and forwarded them to Fleet through a clearing house. Fleet received them following a long holiday weekend.
 

 In May 1991, Heavy-Hitters had asked Fleet not to honor any "stale dated” checks drawn on its account, regardless of the payee. The record does not indicate the reason for the request, but Fleet accepted it, and issued a special instruction that all Heavy-Hitters’ checks were to be inspected and posted manually. Thus, while Fleet’s account posting machine was processing a large batch of checks drawn on its customers’ accounts on the day it received them, it picked up the special instructions requiring manual posting of Heavy-Hitters’ checks and kicked the 18 checks to plaintiffs out into a separate "exception pull” tray where they remained, untouched, until the following morning. On November 13, 1991, Fleet manually inspected the 18 checks and noticed that 13 of them were "stale” — i.e., more than six months old. These checks were hand stamped "Stale Dated” and returned to First National. The remaining five checks — each of which bore the legend "Void After 30 days” — were manually posted to the account of Heavy-Hitters.
 

 First National received the dishonored 13 checks the following day, whereupon it charged back against the plaintiffs’ account the amount of the returned checks ($44,503.29), advised the plaintiffs that they had been dishonored as "stale dated” and charged plaintiffs a $65 fee, all in accordance with the provisions of UCC 4-404.
 

 On November 20, 1991, Fleet returned the five remaining checks, which they had manually inspected and posted a week earlier, citing insufficient funds (NSF). On November 21, 1991 First National advised plaintiffs that these five checks had been dishonored for "insufficient funds”, charged-back $17,116.65 against plaintiffs’ account and assessed plaintiffs a $25 fee.
 

 Plaintiffs then instituted this action against both banks, asserting a number of causes of action including a claim that the banks had violated the obligations imposed upon them by article 4 of the Uniform Commercial Code. Plaintiffs moved for summary judgment, and the banks filed a cross motion for similar relief.
 

 On the motions the following facts were established: plaintiffs deposited the 18 checks in their First National Bank
 
 *114
 
 account on November 8,1991; Fleet Bank received and handled the checks on November 12, but it did nothing on that day which would constitute settlement or remittance of them under the provisions of UCC 4-104 (1)
 
 (l) (see also,
 
 UCC 4-104, Official Comment 6);
 
 [1]
 
 Fleet returned the first 13 checks on November 13, within its midnight deadline
 
 (see,
 
 UCC 4-104 [1] [h]) and, upon receipt, First National revoked its provisional settlement of those 13 checks by its midnight deadline on November 14, 1991
 
 (see,
 
 UCC 4-212 [1]; 4-104 [1] [h]); Fleet posted the remaining five checks to Heavy-Hitters’ account on November 13 and did not dishonor those checks until November 20, 1991, after final payment was established by the posting to the drawer’s account
 
 (see,
 
 UCC 4-213 [1] [c]); and First National charged back the amount of those five checks on November 21, 1991.
 

 Supreme Court held that UCC 4-302 (a) imposes liability on a payor bank for its failure to meet either of two separate obligations: (1) to settle for the checks on the day they are received by the payor bank;
 
 and
 
 (2) to dishonor or return the checks by midnight of the day after they are received. Inasmuch as Fleet Bank failed to meet the first of these obligations, the court held that it was liable for the amount of the first 13 checks, and awarded plaintiffs judgment against both banks. It ruled in favor of defendants on four of the five remaining checks, however, recognizing Fleet’s equitable defense that plaintiff had knowingly presented checks that were void because of the legend on them and that could only be paid by mistake. The fifth check was valid because it had been presented within 30 days, and thus it awarded plaintiffs judgment on it
 
 (see,
 
 159 Misc 2d 1).
 

 The Appellate Division modified, holding that Fleet Bank’s timely compliance with the midnight deadline on November 13
 
 *115
 
 provided a complete defense notwithstanding its failure to comply with the midnight rule requiring settlement a day earlier,
 
 [2]
 
 and granted Fleet’s cross motion for summary judgment dismissing the complaint with respect to the 13 checks involved. Determining that First National’s liability for the 13 checks depended on Fleet’s liability and that Fleet was not liable, the Appellate Division granted First National’s cross motion for summary judgment, as well. The Appellate Division disagreed with Supreme Court’s conclusion that Fleet was entitled to a defense in equity on the four "void” checks, and granted plaintiffs partial summary judgment on those checks against both banks. The judgment in favor of plaintiffs on the last check was affirmed
 
 (see,
 
 207 AD2d 181).
 

 B
 

 Plaintiff A.K.S. Jewelry, is the payee of a $100,000 check which was drawn on the account of defendant Doras Distributor at Chase Manhattan Bank. On February 28, 1990 plaintiff deposited the check into its account at Extebank. That same day, Extebank: (1) provisionally credited plaintiff’s account in the amount of $100,000, and (2) deposited the check in Extebank’s account at Chase. By notice dated March 2, 1990, Chase advised Extebank it had dishonored the check. The notice, which did not explain the reason for dishonor, was accompanied by a photocopy of the check. Extebank received the notice on March 4, 1990. It did not debit plaintiff’s account for the amount of the check, but redeposited the photocopy of the check in its account at Chase on March 5, 1990. Chase returned the check to Extebank on March 13, 1990 stamped "refer to maker.” That same day, Extebank debited plaintiff’s account $100,000, the sum it had credited on February 28.
 

 Plaintiff instituted this action against Doras Distributor, Inc., its president and other related companies, and Chase Manhattan Bank. It did not sue Extebank, nor did Chase implead Extebank.
 

 Supreme Court entered judgment against Chase in favor of plaintiff, holding that because Chase did not return the check until March 2, it had missed its March 1, 1990 midnight deadline and was therefore liable to plaintiff. The court held
 
 *116
 
 that even if proven, Extebank’s alleged untimely charge-back to plaintiff’s account would not insulate Chase from its failure to meet its midnight deadline. The Appellate Division affirmed
 
 (see,
 
 210 AD2d 35).
 

 II
 

 Section 4-302 of the Uniform Commercial Code expressly requires payor banks to meet two deadlines in handling checks. It provides:
 

 "In the absence of a valid defense such as * * * settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of
 

 "(a) a demand item * * * in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it
 
 or, * * *
 
 does not pay or return the item or send notice of dishonor until after its midnight deadline” (emphasis added).
 

 These two deadlines, the midnight rule and midnight deadline, were incorporated into the Uniform Commercial Code as part of a revision which permitted payor banks to defer posting of items until the day after receipt
 
 (see,
 
 UCC 4-301, Official Comment 1;
 
 see generally,
 
 6 Hawkland, Leary & Aider-man, UCC Series, § 4-302:01). The midnight rule — the requirement that the payor bank must settle for the item on the day of receipt —is addressed primarily to the payor bank’s prompt treatment of demand items. It maintains the preexisting legal requirement that payor banks "pay” for demand items on the day of receipt, notwithstanding the extension by one day of the payor bank’s right to dishonor or return the items. The payor bank’s settlement for the item, whether provisional or final, is necessary and important because it establishes the pivotal link between the upstream flow of provisional credits and the downstream flow of final payment from the payor bank through collecting banks to payee
 
 (see,
 
 UCC 4-213, Official Comment 8). It also ensures that use of the funds represented by the item is available to the party immediately entitled to it
 
 (see,
 
 6 Hawk-land,
 
 op. cit.,
 
 § 4-302:02, at 66).
 

 The midnight deadline — requiring dishonor or return of the item by the payor bank by midnight of the next day — results in final payment of the item "simply with the lapse of time” (UCC 4-212, Official Comment 1;
 
 see also, SOS Oil Corp. v Norstar Bank,
 
 76 NY2d 561, 567). The deadline, which presup
 
 *117
 
 poses a prior settlement for the item, was adopted to save banking institutions the effort and expense of sending confirmation of final payment of items
 
 (see,
 
 6 Hawkland, op.
 
 cit.,
 
 § 4-302:1, at 60-61).
 

 Section 4-302 is intended to sanction institutions failing to meet the requirements for posting and dishonoring items contained in UCC 4-301. It does so by imposing liability for the amount of the item as a penalty upon a payor bank that fails to comply with either of the midnight requirements
 
 (see,
 
 UCC 4-302, Official Comment; New York Annots). The separate force of the two requirements is recognized in the statute. Thus, the statute does not impose liability for noncompliance with the midnight rule against a bank that is both the depositary and payor bank with respect to a particular item
 
 (see also,
 
 UCC 4-301 [2]). When a bank acts as depositary and payor, the immediate settlement of the item is presumed, but the bank remains accountable for the item if, like all other payor banks, it does not dishonor the item by midnight of the following banking day. By contrast, the statute holds a nondepositary payor bank, such as Fleet, liable for its failure to meet
 
 either
 
 obligation.
 

 The heavy burden section 4-302 imposes on payor banks serves important commercial purposes: it "expedites the collection process by motivating banks to process instruments quickly, and it firms up the provisional credits received by each bank in the collection chain, thereby supplying a key element of certainty in commercial paper transactions”
 
 (SOS Oil Corp. v Norstar Bank,
 
 76 NY2d, at 567,
 
 supra).
 
 Each of the separate statutory obligations plays a distinct role in furthering these purposes and, contrary to the holding of the Appellate Division in the
 
 Hanna
 
 case, a payor bank cannot be insulated from liability by meeting only the midnight deadline.
 

 Some commentators have questioned the wisdom of imposing liability under UCC 4-302 (a) for the payor bank’s failure to settle for the item on the day it is received when the bank has dishonored or returned the item within the midnight deadline because if the item has been dishonored before payment of it has become final, the only apparent harm that results is that the depositary bank has been deprived of one day’s interest on the amount of the item. They maintain that holding the payor bank accountable for the face value of the item in light of such minimal damages is an unduly harsh penalty
 
 (see,
 
 6 Hawk-land,
 
 op. cit,
 
 § 4-302:02, at 66-67). Noting that the statute imposes liability for a payor bank’s failure to settle for an item
 
 *118
 
 on the day of receipt and that the statute does not expressly provide that compliance with the midnight deadline is a defense to noncompliance with the midnight rule, the commentators nevertheless urge courts to construe timely dishonor or return of the item as a defense "like” settlement effected
 
 (see, id.; see also,
 
 preamble to UCC 4-302). We do not similarly view the matter.
 

 The statutory requirement that the payor bank settle for the item on the day of receipt is the first step toward effectuating the overarching purposes of article 4 of the Uniform Commercial Code, to make the transactions it regulates swift and certain. Although timely dishonor may minimize pecuniary harm to the particular parties involved, forgiveness of the payor bank’s untimely conduct would do a significant disservice to the integrity of the complex, ordered, and predictable operation of article 4’s rules governing banks. Moreover, if compliance with the midnight deadline operates as a defense to noncompliance with the midnight rule, the midnight rule is effectively written out of the statute and payor banks are thus no longer required to settle the item on the day of receipt despite the plain statutory requirement that they do so. If such a change in the plain language of UCC 4-302 (a) is to be made, it should be made by the Legislature, not the courts.
 

 Ill
 

 A
 

 Applying UCC 4-302 (a) to the
 
 Hanna
 
 action, Fleet Bank is accountable to plaintiffs for the amount of the 13 checks because it failed to settle them on the day they were received. First National’s motion for summary judgment should have been granted with respect to all 18 checks.
 

 First National’s right to charge-back plaintiffs’ account for a provisional credit is set forth in UCC 4-212 (l).
 
 [3]
 
 That section provides that a collecting bank is entitled to charge-back a provisional credit to its customer if the bank
 
 *119
 
 The section further provides that the right to charge-back terminates if and when a settlement for the item received by the collecting bank is or becomes final, that is, when it is finally paid by the payor bank (UCC 4-212 [1];
 
 see,
 
 UCC 4-211 [3]; 4-213 [2], [3];
 
 see also, Fromer Distribs. v Bankers Trust Co.,
 
 36 AD2d 840). A collecting bank acts as the agent of its customer, and until such time as the collecting bank receives final payment, the risk of loss continues in the customer, the owner of the item
 
 (see,
 
 UCC 4-201, Official Comment 4;
 
 see also,
 
 5 Hawk-land, Leary & Alderman, UCC Series, §§ 4-201:02, 4-201:03). Thus, the provisional credit to the customer remains provisional and revocable until the collecting bank has received the funds, at which time "the relationship between the bank and customer changes from that of agent-principal to debtor-creditor” (5 Hawkland,
 
 op. cit.,
 
 § 4-201:03, at 371).
 

 
 *118
 
 "fails by reason of dishonor, suspension of payments by a bank
 
 or otherwise
 
 to receive a settlement for the item which is or becomes final * * * if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts” (emphasis added).
 

 
 *119
 
 Here, Fleet Bank never settled for
 
 any
 
 of the 18 checks involved in the litigation and thus First National never received a provisional payment of them. With respect to the first 13 checks, they were dishonored and returned by Fleet Bank, and there was no final payment of them. Thus, First National’s right to charge-back to the customer did not terminate. Inasmuch as it charged-back the provisional credit within
 
 its
 
 midnight deadline, i.e., prior to midnight on November 14, 1991 (the day after it received the returned and dishonored checks) in compliance with UCC 4-212 (1), it is not accountable to plaintiffs for the amount of the 13 checks
 
 (cf.,
 
 UCC 4-213 [3]). Accordingly, First National’s cross motion for summary judgment was properly granted with respect to those checks.
 

 Nor is First National liable to plaintiffs on the remaining five checks. Had Fleet settled for those checks on the day of receipt, its act of posting the checks to Heavy-Hitters’ account on November 13 would have resulted in final payment of them
 
 (see,
 
 UCC 4-213 [1] [c]), and First National’s right to charge-back plaintiffs’ account would have terminated. In this case, however, Fleet never settled for the checks and thus there was no provisional payment to First National which the posting could make final. Thus, First National’s status as plaintiffs’ agent never changed to the status of debtor. First National received and returned checks on November 20, 1991 and charged-back plaintiffs’ account on November 21, within its midnight deadline
 
 (see,
 
 UCC 4-212 [1]). Accordingly, First National is not liable to plaintiffs on those five checks, and its motion for summary judgment should be granted in its entirety.
 

 
 *120
 
 B
 

 In
 
 A.K.S. Jewelry v Doras Distrib.,
 
 payor bank Chase Manhattan concedes that its dishonor of the check was untimely, but contends that it is relieved of its liability for the untimely return of the check because the right of Extebank to charge-back the provisional credit terminated when payment became final upon passage of Chase’s midnight deadline on March 1,1990. Chase contends that plaintiff's damages, arising from its inability to collect on Doras’ check, are attributable solely to Extebank’s untimely charge-back against plaintiff’s account.
 

 The short answer to Chase’s claim is that Extebank is not before the Court because Chase did not implead it. Chase is strictly liable to plaintiff pursuant to UCC 4-302 (a) for its failure to return or send notice of dishonor of the check by its midnight deadline, and it cannot shift liability to a bank whose conduct was not challenged in the proceedings at nisi prius.
 

 Moreover, Chase’s argument is without merit. When a payor bank fails to return the check by its midnight deadline, UCC 4-302 (a) imposes strict liability on the bank for the amount of the check
 
 (see, SOS Oil Corp. v Norstar Bank,
 
 76 NY2d, at 567,
 
 supra;
 
 2 White and Summers, Uniform Commercial Code § 20-2, at 292 [4th ed]). Where both the payor bank and the depositary bank violate their respective midnight deadlines
 
 (see,
 
 UCC 4-302 [a]; 4-212 [1]), liability to the customer is passed upstream from the depositary bank to the payor bank
 
 (see, Fromer Distribs. v Bankers Trust Co.,
 
 36 AD2d 840,
 
 supra).
 
 Liability ultimately rests upon the payor bank because it was the institution in the best position to timely dishonor or return the item in the first place.
 

 Accordingly, defendant Chase Manhattan Bánk’s untimely return of the $100,000 check renders it liable to plaintiff for the amount of the check notwithstanding an untimely charge-back by the depositary bank, and judgment was correctly granted to plaintiff.
 

 IV
 

 In the
 
 Hanna
 
 appeal Fleet also asserts that it, as a payor bank, may assert an equitable defense to the payee’s action for payment on the check even though it failed to return or dishonor Heavy-Hitters’ checks within the midnight deadline.
 

 The five most recent checks presented by plaintiffs — those dated less than six months prior to the date presented — all
 
 *121
 
 bore the legend "Void After 30 days” immediately above the drawer’s signature on the face of the checks. Four of these checks were presented more than 30 days after they were drawn. The checks were posted to the drawer’s account on November 13, 1991, the day after Fleet Bank received them, and at that point, Fleet Bank’s purported payment of them became final
 
 (see,
 
 UCC 4-213 [1] [c]). On November 20, 1991 Fleet Bank returned the checks to First National Bank due to insufficient funds in Heavy-Hitters’ account.
 

 Notwithstanding Fleet’s manual processing of these checks prior to its midnight deadline and its return of them for other reasons, Fleet contends that plaintiffs should not prevail in their claims to recover on them because plaintiffs presented the checks with knowledge that they should not he paid because they were more than 30 days old and that if Fleet did pay the checks, it would do so only by mistake. The bank contends that the strict liability imposed pursuant to UCC 4-302 (a) should be subordinated to this equitable doctrine. It relies on UCC 3-418, which states that payment of any instrument is only "final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment.” Fleet argues that plaintiffs could not have relied
 
 in good faith
 
 on Fleet Bank’s payment of the four checks. Supreme Court recognized Fleet’s equitable defense; the Appellate Division did not. We conclude that the Appellate Division was correct.
 

 Section 3-418 of the Uniform Commercial Code expressly excludes from its coverage "recovery of bank payments” under article 4. As the Official Comment to that section acknowledges, a bank’s ability to recover an item which it has improperly paid is temporally "limited by the bank collection provision (Section 4-301) * * * [and] terminates in any case when the bank has made final payment” (UCC 3-418, Official Comment 5). Moreover, the Code provides that "[i]n the event of conflict, the provisions of this Article [4] govern those of Article 3”
 
 (see,
 
 UCC 4-102 [1]). Thus, any right of Fleet Bank to recover its payment of the four void checks terminated when it posted those items to Heavy-Hitters’ account
 
 (see,
 
 UCC 4-213 [1] [c]).
 

 Notwithstanding this, Fleet Bank argues that UCC 1-103 provides that principles of equity may be asserted when it states that "[ujnless displaced by the particular provisions of this Act, the principles of law and equity * * * shall supplement its provisions.” Fleet relies on
 
 Morgan Guar. Trust Co. v American Sav. & Loan Assn.
 
 (804 F2d 1487, 1494-1500,
 
 cert
 
 
 *122
 

 denied,
 
 482 US 929 [payor bank entitled to restitution where holder of note presented it for payment notwithstanding its knowledge of maker’s bankruptcy]);
 
 see also, National Sav. & Trust Co. v Park Corp.
 
 (722 F2d 1303,
 
 cert denied
 
 466 US 939 [payor bank entitled to restitution when checks mistakenly paid on account having insufficient funds]). We think it plain that UCC 4-302 displaces the common-law principles of equity
 
 (see, Bank Leumi Trust Co. v Bank of Mid-Jersey,
 
 499 F Supp 1022, 1027,
 
 affd
 
 659 F2d 1065;
 
 Third Century Recycling v Bank of Baroda,
 
 704 F Supp 417, 421;
 
 compare, Hechter v New York Life Ins. Co.,
 
 46 NY2d 34, 39). By its terms, section 4-302 allows only limited defenses to untimely return or dishonor of an item, and they do not include the equitable defense asserted by Fleet Bank here
 
 (compare,
 
 1990 Revised Uniform Commercial Code § 4-302 [b]; 2B ULA 54 [Master ed], not currently adopted in New York, which permits payor banks the defense of fraud by the person seeking to enforce the liability). Moreover, section 4-302 (a) holds that a payor bank is strictly liable for the amount of an item that has not been timely returned or dishonored "whether properly payable or not”.
 

 As a policy matter, permitting a payor bank to avoid this strict liability by asserting the equitable defense of mistaken payment would seriously undermine the predictability and finality of commercial paper transactions, because items finally paid would be indefinitely exposed to claims of mistaken payment by banks. If the policies and banking practices sought to be achieved by article 4 of the Uniform Commercial Code are to be satisfied, they cannot be subordinated to equitable arguments that might be persuasive in other circumstances. That part of the Appellate Division order granting plaintiffs’ motion for summary judgment against Fleet Bank on the four checks should be affirmed.
 

 Accordingly, in
 
 Hanna v First Natl. Bank,
 
 the order of the Appellate Division should be modified to grant summary judgment to plaintiffs and defendant First National Bank of Rochester, with costs to the prevailing parties against defendant Fleet Bank and, as so modified, affirmed. In
 
 A.K.S. Jewelry Mfg. Corp. v Doras Distrib.,
 
 the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 In
 
 Hanna v First Natl. Bank:
 
 Order modified in accordance with the opinion herein, with costs to plaintiffs and defendant
 
 *123
 
 First National Bank of Rochester as against defendant Fleet Bank and, as so modified, affirmed.
 

 In
 
 A.K.S. Jewelry Mfg. Corp. v Doras Distrib.:
 
 Order affirmed, with costs.
 

 [1]
 

 . To "settle” an item pursuant to UCC 4-104 (1)
 
 (l),
 
 a payor bank is required to do more than internally process the items. In support of their motion for summary judgment, plaintiffs established a prima facie case that Fleet had not done anything more than internally process the checks on November 12, and despite Fleet’s contention that there was a clearing house settlement of the checks on that day, Fleet presented no admissible evidence of that fact. It therefore failed to meet its burden in opposition to plaintiffs’ motion (see,
 
 Alvarez v Prospect Hosp.,
 
 68 NY2d 320, 324;
 
 Zuckerman v City of New York,
 
 49 NY2d 557, 562). There is no merit in Fleet’s contention that its
 
 receipt
 
 of the depositary bank’s cash letter, which does not appear to be a remittance instrument (see, UCC 4-104 [1]
 
 [l],
 
 Official Comment 6;
 
 cf,
 
 UCC 4-105 [f|) constitutes a settlement, and Fleet offered no evidence of any agreement which would have permitted a clearing house settlement upon the cash letter
 
 (cf., Universal C.I.T. Credit Corp. v Farmers Bank,
 
 358 F Supp 317, 322-323; UCC 4-103 [1]).
 

 [2]
 

 . The midnight rule requires a payor bank to settle for an item before midnight of the banking day of receipt; the midnight deadline provides that the checks must be returned or dishonored before midnight of the day following receipt (see, UCC 4-301 [1]; 4-302 [a]; see
 
 also,
 
 UCC 4-104 [1]
 
 [l];
 
 [h]X
 

 [3]
 

 . In this action, First National is both a depositary and collecting bank (see, UCC 4-105 [a], [d]).