■ ZANA DOBROSHI, on Behalf of Herself and All Others Similarly Situated, Respondent-Appellant, v BANK OF AMERICA, N.A., Appellant-Respondent. [886 NYS2d 106]—

Order, Supreme Court, New York County (Richard F. Braun, J.), entered September 24, 2008, which, inter alia, granted defendant's motion for partial summary judgment to the extent of dismissing the second through sixth causes of action, denied the motion to the extent it sought dismissal of the seventh and eighth causes of action and denied defendant's motion to strike the class action allegations from the complaint, unanimously modified, on the law, to deny the motion for partial summary judgment as to the second cause of action, to grant the motion for partial summary judgment dismissing the seventh and eighth causes of action, and to grant the motion to strike the class action allegations, and otherwise affirmed, without costs.

Contrary to defendant's claim, the second cause of action pleads fraud with sufficient particularity to satisfy CPLR 3016 (b) (see Lanzi v Brooks, 43 NY2d 778, 780 [1977]). It informs defendant that plaintiff complains of the significant increase in settlement costs between the good faith estimate of settlement services (GFE) and the HUD-1 statement, and of the fact that she was informed about this increase only one day before the closing.

Plaintiff's allegation that defendant deliberately underestimated settlement costs to induce her to obtain a loan from it, rather than from a competing lender states a claim for fraud

(*see Wright v Selle*, 27 AD3d 1065, 1067-1068 [2006]). The GFE was not a mere statement of future intent (*see Watts v Jackson Hewitt Tax Serv. Inc.*, 579 F Supp 2d 334, 352 [ED NY 2008]), and the issue of material misrepresentation is not subject to summary disposition (*see e.g. Brunetti v Musallam*, 11 AD3d 280, 281 [2004]).

The motion court also noted that plaintiff went forward with the closing despite the increased costs. However, under the circumstances, that was the only sensible thing for plaintiff to do (*see Negrin v Norwest Mtge.*, 263 AD2d 39, 50 [1999]). Contrary to defendant's contention, plaintiff's damages are not speculative. She alleges that she was forced to pay $4,000 for defendant's attorney's services, that this amount was excessive, that the GFE estimated that the attorney's fees would be $450, and that the prevailing customary charge in New York City for the lending bank's attorney's fees ranges from $450 to $800. Furthermore, because the fraud claim is reinstated, plaintiff's demand for punitive damages is also reinstated, since "[i]t is for the jury to decide whether [defendant's actions] were so reprehensible as to warrant punitive damages" (*Swersky v Dreyer & Traub*, 219 AD2d 321, 328 [1996]).

The third cause of action (negligent misrepresentation) was correctly dismissed. "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified" (*Kimmell v Schaefer*, 89 NY2d 257, 263 [1996]). This Court has repeatedly held that an arm's length borrower-lender relationship is not of a confidential or fiduciary nature and therefore does not support a cause of action for negligent misrepresentation (*see Korea First Bank of N.Y. v Noah Enters., Ltd.*, 12 AD3d 321, 323 [2004], *lv denied* 4 NY3d 710 [2005]; *River Glen Assoc. v Merrill Lynch Credit Corp.*, 295 AD2d 274, 275 [2002]; *FAB Indus. v BNY Fin. Corp.*, 252 AD2d 367 [1998]; *Heller Fin. v Apple Tree Realty Assoc.*, 238 AD2d 198, 199 [1997], *lv dismissed* 90 NY2d 889 [1997]; *Banque Nationale de Paris v 1567 Broadway Ownership Assoc.*, 214 AD2d 359, 360 [1995]). Defendant's alleged superior knowledge of, among other things, the legal fees typically charged by its counsel does not constitute the "unique or special expertise" required to depart from this rule.

For similar reasons, the fourth cause of action (breach of the duty to disclose) was correctly dismissed. Plaintiff has not established that defendant's superior knowledge of essential facts renders the transaction without disclosure inherently

unfair (*see generally Swersky v Dreyer & Traub*, 219 AD2d at 327-328) and plaintiff's claim of excessive fees fails to overcome the rule that the legal relationship between a borrower and a bank is a contractual one and does not give rise to a fiduciary relationship (*see Bank Leumi Trust Co. of N.Y. v Block 3102 Corp.*, 180 AD2d 588, 589 [1992], *lv denied* 80 NY2d 754 [1992]; *Trustco Bank, N.A. v Cannon Bldg. of Troy Assoc.*, 246 AD2d 797, 799 [1998]).

The fifth cause of action (conversion) was properly dismissed. "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights" (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 50 [2006] [citations omitted]). Here, the motion court did not dismiss the conversion claim because of plaintiff's failure to satisfy the first element. Rather, it dismissed the claim due to her failure to satisfy the second element.

The sixth cause of action (unjust enrichment) was properly dismissed. It is not sufficient that a defendant is enriched; rather, the enrichment must be unjust (*see McGrath v Hilding*, 41 NY2d 625, 629 [1977]). While the closing costs more than doubled between the GFE and the HUD-1, defendant did not retain this increase.

The record shows that defendant has met its burden of showing that it is entitled to judgment as a matter of law dismissing the seventh and eighth causes of action alleging negligent training and negligent supervision, respectively. Plaintiff has not identified the laws, rules, regulations, and best practices standards that defendant allegedly violated (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544-545 [2002]). Further, plaintiff, who has not sued any bank employee, has not shown that defendant knew of any "employee's propensity to commit the tortious act or should have known of such propensity had the defendant conducted an adequate hiring procedure" (*N. X. v Cabrini Med. Ctr.*, 280 AD2d 34, 42 [2001], *mod on other grounds* 97 NY2d 247 [2002]) or that defendant's alleged negligent training was the proximate cause of plaintiff's injuries.

The motion court should have stricken the class action allegations. First, individual issues will predominate because all claims under General Business Law § 349 will require analysis of whether the ultimate closing costs were so unreasonable as to amount to a deceptive practice (*cf. Weil v Long Is. Sav. Bank, FSB*, 200 FRD 164, 174 [ED NY 2001] [distinguishing a case where each plaintiff would have to provide evidence of the services performed compared to a case where the plaintiffs claim

that the alleged scheme was illegal per se]). Moreover, plaintiff contends that defendant's bad faith in making estimates is actionable. However, to determine if defendant acted in bad faith, it will be necessary to individually examine each of the tens of thousands of transactions at issue. Finally, plaintiff's proposed class would number in the thousands and would have individually tailored written disclosures, different types and amounts of fees and different reasons for the increase in closing costs. These circumstances negate the possibility that common questions would predominate (*see Rose v SLM Fin. Corp.*, 254 FRD 269, 272-273 [WD NC 2008]). Concur—Andrias, J.P., Moskowitz, DeGrasse and Richter, JJ. [*See* 2008 NY Slip Op 32583(U).]