[958 NE2d 77, 934 NYS2d 43]

GREENBERG, TRAGER & HERBST, LLP, Appellant, v HSBC BANK
USA et al., Respondents. (And a Third-Party Action.)

Argued September 7, 2011; decided October 13, 2011

**POINTS OF COUNSEL**

*Greenberg, Trager & Herbst, LLP*, New York City (*Kalvin Ka-mien, Richard J. Lambert* and *Paul V. Lucas* of counsel), for appellant. I. The First Department committed reversible error in holding that Citibank, N.A. has no obligation to have a reasonable procedure for the detection of counterfeit Citibank bank checks and that Citibank has absolute immunity for negligence in failing to detect counterfeit bank checks. (*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340; *Monreal v Fleet Bank*, 95 NY2d 204; *JP Morgan Chase Bank, N.A. v Pinzler*, 28 Misc 3d 1214[A], 2010 NY Slip Op 51324[U].) II. Since Citibank was in the best position to detect that the Citibank check was counterfeit, and Citibank's negligence in failing to detect the counterfeit check caused Greenberg, Trager & Herbst, LLP's (GTH) loss, the First Department should have ruled that Citibank is liable to GTH for GTH's loss on principles of equity and estoppel. (*Swiss Credit Bank v Chemical Bank*, 422 F Supp 1305; *Bunge Corp. v Manufacturers Hanover Trust Co.*, 31 NY2d 223; *Fireman's Fund Ins. Co. v Bank of N.Y.*, 146

AD2d 95; *Banco Mercantil de Sao Paulo v Nava*, 120 Misc 2d 517; *Marine Midland Bank v Umber*, 96 Misc 2d 835; *Hall v Bank of Blasdell*, 306 NY 336; *Chemical Bank of Rochester v Haskell*, 51 NY2d 85; *JP Morgan Chase Bank, N.A. v Pinzler*, 28 Misc 3d 1214[A], 2010 NY Slip Op 51324[U].) III. HSBC Bank USA was grossly negligent and/or negligent in failing to advise Greenberg, Trager & Herbst, LLP that the Citibank check had been dishonored and returned by Citibank, N.A. (*Dobroshi v Bank of Am., N.A.*, 65 AD3d 882; *Cristallina v Christie, Manson & Woods Intl.*, 117 AD2d 284; *American Motorists Ins. Co. v Keep Servs., Inc.*, 63 AD3d 865; *Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340; *Monreal v Fleet Bank*, 95 NY2d 204; *Aikens Constr. of Rome v Simons*, 284 AD2d 946; *Herzog, Engstrom & Koplovitz v Union Natl. Bank*, 226 AD2d 1004; *New York Credit Men's Adj. Bur. v Manufacturers Hanover Trust Co.*, 41 AD2d 912; *Broadway Natl. Bank v Barton-Russell Corp.*, 154 Misc 2d 181; *JP Morgan Chase Bank, N.A. v Pinzler*, 28 Misc 3d 1214[A], 2010 NY Slip Op 51324[U].) IV. Since HSBC Bank USA committed multiple acts of negligence and malfeasance in failing to notify Greenberg, Trager & Herbst, LLP (GTH) of the returned Citibank check, HSBC is liable to GTH for GTH's loss on principles of equity and estoppel. (*Bunge Corp. v Manufacturers Hanover Trust Co.*, 31 NY2d 223; *Fireman's Fund Ins. Co. v Bank of N.Y.*, 146 AD2d 95; *Swiss Credit Bank v Chemical Bank*, 422 F Supp 1305; *Hall v Bank of Blasdell*, 306 NY 336; *Chemical Bank of Rochester v Haskell*, 51 NY2d 85; *Banco Mercantil de Sao Paulo v Nava*, 120 Misc 2d 517; *Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340; *Monreal v Fleet Bank*, 95 NY2d 204.) V. The First Department improperly amended the UCC by judicial fiat in holding that a bank may allege an "administrative return" (a concept not recognized by the UCC) to avoid its statutory duty under the UCC to advise a depositor by the midnight deadline that a check has been dishonored and returned in order to have the right to charge back the check amount to the customer's account. (*Bright Homes v Wright*, 8 NY2d 157; *Davis v Davis*, 71 AD3d 13; *Manufacturers Hanover Trust Co. v Akpan*, 91 Misc 2d 622.)

*Phillips Lytle LLP*, Buffalo (*Preston L. Zarlock* and *Patricia A. Mancabelli* of counsel), and *Michael R. Mendola* for HSBC Bank USA, respondent. I. HSBC Bank USA had an absolute right to revoke the provisional credit and charge-back appellant's account. (*Gluck v JPMorgan Chase Bank*, 12 AD3d 305; *Peter Marino, Ltd. v Bank of N.Y.*, 250 AD2d 485; *Josephs v*

*Bank of N.Y.*, 302 AD2d 318; *Mahopac Natl. Bank v Gelardi*, 299 AD2d 460; *Hanna v First Natl. Bank of Rochester*, 87 NY2d 107; *Call v Ellenville Natl. Bank*, 5 AD3d 521; *Allen v Carver Fed. Sav. & Loan Assn.*, 123 Misc 2d 704; *Commerce Bank, N.A. v Jones*, 19 Misc 3d 1131[A], 2008 NY Slip Op 50972[U]; *Ridgewood Sav. Bank v Grubb*, 11 Misc 3d 1093[A], 2006 NY Slip Op 50835[U]; *Chase v Morgan Guar. Trust Co.*, 590 F Supp 1137.) II. HSBC Bank USA did not violate any notice obligation to appellant following the Federal Reserve Bank's misrouting of the counterfeit check. (*Hanna v First Natl. Bank of Rochester*, 87 NY2d 107; *Manufacturers Hanover Trust Co. v Akpan*, 91 Misc 2d 622; *Bank of N.Y. v Asati, Inc.*, 184 AD2d 443; *Broadway Natl. Bank v Barton-Russell Corp.*, 154 Misc 2d 181; *Northpark Natl. Bank v Bankers Trust Co.*, 572 F Supp 524; *Snyder v Wetzler*, 84 NY2d 941; *Bingham v New York City Tr. Auth.*, 99 NY2d 355; *United States Fid. & Guar. Co. v Federal Reserve Bank of N.Y.*, 590 F Supp 486, 786 F2d 77.) III. Appellant cannot shift the risk of loss to HSBC Bank USA. (*Allen v Carver Fed. Sav. & Loan Assn.*, 123 Misc 2d 704; *Chase v Morgan Guar. Trust Co.*, 590 F Supp 1137; *United States Fid. & Guar. Co. v Federal Reserve Bank of N.Y.*, 590 F Supp 486, 786 F2d 77; *Isaacs v Chartered New England Corp.*, 378 F Supp 370; *Call v Ellenville Natl. Bank*, 5 AD3d 521; *Moughrabie v Citibank, N.A.*, 20 Misc 3d 136[A], 2008 NY Slip Op 51528[U]; *Dobroshi v Bank of Am., N.A.*, 65 AD3d 882, 14 NY3d 785; *Bennice v Lakeshore Sav. & Loan Assn.*, 254 AD2d 731; *Kings Premium Serv. Corp. v Manufacturers Hanover Trust Co.*, 115 AD2d 707; *Aaron Ferer & Sons Ltd. v Chase Manhattan Bank, N.A.*, 731 F2d 112.) IV. The First Department correctly held that appellant raised no triable issue of fact regarding its negligence claim. (*Sheila C. v Povich*, 11 AD3d 120; *Clementoni v Consolidated Rail Corp.*, 30 AD3d 986, 8 NY3d 963; *Pulka v Edelman*, 40 NY2d 781; *Tevdorachvili v Chase Manhattan Bank*, 103 F Supp 2d 632; *Calisch Assoc. v Manufacturers Hanover Trust Co.*, 151 AD2d 446; *Polzer v TRW, Inc.*, 256 AD2d 248; *Quail Ridge Assoc. v Chemical Bank*, 162 AD2d 917; *Wexselblatt v Bank of Boston Intl.*, 666 F Supp 513; *Luxonomy Cars v Citibank, N.A.*, 65 AD2d 549; *Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340.) V. The First Department correctly determined that appellant was in the best position to avoid the loss. (*Bunge Corp. v Manufacturers Hanover Trust Co.*, 31 NY2d 223; *Swiss Credit Bank v Chemical Bank*, 422 F Supp 1305; *Fireman's Fund Ins. Co. v Bank of N.Y.*, 146 AD2d 95; *Hall v Bank of Blasdell*, 306 NY 336; *Chemical Bank of Rochester v*

*Haskell*, 51 NY2d 85; *Banco Mercantil de Sao Paulo v Nava*, 120 Misc 2d 517.) VI. HSBC Bank USA had an absolute right to setoff against the IOLA account for the provisional credit. (*United States Trust Co. of N.Y. v McSweeney*, 91 AD2d 7; *Marine Midland Bank-N.Y. v Graybar Elec. Co.*, 41 NY2d 703; *622 W. 113th St. Corp. v Chemical Bank N.Y. Trust Co.*, 52 Misc 2d 444; *Miles v Bank of Commerce*, 76 Misc 2d 623; *In re Bennett Funding Group, Inc. v Manufacturers & Traders Trust Co.*, 146 F3d 136; *Chemical Bank v Ettinger*, 196 AD2d 711; *Gillman v Chase Manhattan Bank*, 73 NY2d 1.) VII. Appellant waived its claim to punitive damages. (*Schwartz v Aetna Life Ins. & Annuity Co.*, 214 AD2d 975; *Sanderson v Bellevue Maternity Hosp.*, 259 AD2d 888; *Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 NY2d 603; *New York Univ. v Continental Ins. Co.*, 87 NY2d 308; *New York Mar. & Gen. Ins. Co. v Tradeline [L.L.C.]*, 266 F3d 112; *Ladenburg Thalmann & Co. Inc. v Imaging Diagnostic Sys., Inc.*, 176 F Supp 2d 199.)

*Zeichner Ellman & Krause LLP*, New York City (*Barry J. Glickman* of counsel), for Citibank, N.A., respondent. I. Citibank, N.A. properly rejected payment of the check as a matter of law pursuant to the UCC—it had no additional duty to notify that the check was counterfeit. (*Pace Publs. v Bank of N.Y.*, 183 AD2d 601; *Campbell v Citibank*, 302 AD2d 150; *Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340; *Monreal v Fleet Bank*, 95 NY2d 204; *JP Morgan Chase Bank, N.A. v Pinzler*, 28 Misc 3d 1214[A], 2010 NY Slip Op 51324[U].) II. Plaintiff has no negligence nor equity and estoppel claims against Citibank, N.A. as a matter of law. (*Prudential-Bache Sec. v Citibank*, 73 NY2d 263; *Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340; *Met Frozen Food Corp. v National Bank of N. Am.*, 89 Misc 2d 1033; *Casco Bank & Trust Co. v Bank of New York*, 584 F Supp 763; *Hanna v First Natl. Bank of Rochester*, 87 NY2d 107; *Banco Mercantil de Sao Paulo v Nava*, 120 Misc 2d 517; *Marine Midland Bank v Umber*, 96 Misc 2d 835; *Hall v Bank of Blasdell*, 306 NY 336; *Bunge Corp. v Manufacturers Hanover Trust Co.*, 31 NY2d 223; *Fireman's Fund Ins. Co. v Bank of N.Y.*, 146 AD2d 95.) III. The Appellate Division properly affirmed the dismissal of plaintiff-appellant's improper claims for punitive damages and attorneys fees against Citibank, N.A. (*Laurie Marie M. v Jeffrey T.M.*, 159 AD2d 52, 77 NY2d 981; *Ossandan v Swiss Bank Corp.*, 880 F2d 1319; *Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 NY2d 603; *Luxonomy Cars v Citibank, N.A.*, 65 AD2d 549; *Giblin v Murphy*, 73 NY2d 769; *Silberstein v First Wall St. Capital Corp.*,

128 AD2d 516; *Matter of A.G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1; *Rollin v Grand Store Fixture Co., Inc.*, 231 App Div 47; *Lurman v Jarvie*, 82 App Div 37, 178 NY 559.) IV. The truth is that plaintiff caused its own loss.

## OPINION OF THE COURT

CIPARICK, J.

In this dispute between a law firm and two banks, the issues presented are (1) the scope of the duty a payor bank owes to a noncustomer depositor of a counterfeit check and (2) the scope of the duty a depositary bank owes its customer when it acts as a collecting bank during the check collection process. We conclude that neither the depositary/collecting bank nor the payor bank violated any duty owed to the depositor and that summary judgment dismissing the complaint was properly granted.

## I.

Plaintiff Greenberg, Trager & Herbst, LLP (GTH) is a law firm primarily involved in construction litigation law. In September 2007, a partner at GTH received an e-mail from a representative of Northlink Industrial Limited (Northlink), a Hong Kong company. The e-mail stated that Northlink was looking for legal representation to, among other things, assist it in the collection of debts owed by its North American customers. A series of e-mails followed discussing the nature of Northlink's desired representation. At some point, GTH indicated a willingness to represent Northlink and requested a $10,000 retainer. The law firm was informed that a Northlink customer had sent a payment to GTH and that GTH could take its retainer from those funds. A Citibank check for $197,750 was received by GTH and GTH was instructed, via e-mail, to remit the funds to Northlink while retaining $10,000 as a retainer. The e-mail also provided wiring instructions to Citibank in Hong Kong. On Friday, September 21, 2007, GTH deposited the check into its attorney trust account at HSBC.

The next business day, Monday, September 24th, the HSBC account reconciliation department processed the check and pursuant to the federal funds availability law provisionally credited GTH's account for $197,750. HSBC, like most commercial banks, presents its checks through the Federal Reserve Bank. HSBC determines which Federal Reserve Bank should receive

the check for presentment to the appropriate payor bank by utilizing the American Bankers Association routing number located on the bottom of the check. The routing number is part of the microencoding number (MICR) on the bottom of every check. The routing number on the bottom of this check read 026009645. According to HSBC, this routing number indicated that the check should be sent to the Federal Reserve Bank of Philadelphia (FRBP) for presentment to the appropriate payor bank. Accordingly, HSBC sent the check to FRBP for processing. FRBP presented an image replacement document (IRD)[1] of the check to Citibank's Item Processing North Department in Englewood Cliffs, New Jersey (Item Processing North) that same day.

According to Citibank, Item Processing North processes only checks with the following three routing numbers: 021000089, 021272655 and 221172610. If a check contains a routing number other than one of these three routing numbers, the check cannot be processed by Item Processing North because it only has access to account information associated with the three routing numbers. Because the routing number was not recognized by Item Processing North, the automated sorting system directed the IRD to the reject pocket. This happens when there is an issue with the MICR on the check.[2] An Image Processing North clerk examined the IRD and determined that the routing number was not a number that belonged to Image Processing North. Image Processing North sent the IRD back to FRBP, with the notation "sent wrong." The FRBP sent the IRD back to HSBC.

HSBC received the IRD with the notation "sent wrong" the next day, September 25, 2007.[3] According to HSBC, when

---

1. An image replacement document is a digital representation of the check and maintains the status of a legal check in lieu of the original check.

2. According to Citibank, approximately 2% of scanned checks are redirected to the reject pocket each day. The checks are then manually reviewed to determine why they were rejected.

3. GTH notes that an internal HSBC document states that the check was returned for "Insuff Funds." HSBC explained that this internal document is a printout from HSBC's returned imaging system, which contains a true and accurate copy of the check. The image of the check itself has the notation, from Citibank, "sent wrong." HSBC further explained that when a check image is placed into HSBC's returned image system, descriptive information is associated with it. The default setting for the descriptive information is "insufficient funds." According to HSBC, an operator did not adjust the default setting and, therefore, the descriptive information read "insufficient funds."

a check is returned for reasons other than dishonor, such as a damaged or illegible routing number, it is known in the industry as an "administrative return." HSBC also noted that when a payor bank dishonors a check, HSBC typically receives an Electronic Advanced Return Notification System (EARNS) notification. HSBC did not receive such a notice on September 24 or 25. Because the check was marked "sent wrong," HSBC assumed that there was a problem with the routing number that required repairing. HSBC then repaired the routing number by utilizing the partial routing number located on the top right hand corner of the check. HSBC, using the repaired routing number, determined that the check actually belonged to Citibank, Las Vegas. HSBC placed the repaired routing number on the bottom of the check. On September 26, 2007, HSBC sent the check to the Federal Reserve Bank, San Francisco (FRBS). HSBC never informed GTH of the "administrative return" of the check.

On September 27, 2007, a GTH partner called a representative of HSBC inquiring as to whether the check had "cleared" and if the funds were available for disbursement. According to GTH, a five-year banking relationship existed between them.[4] GTH was informed that the funds were available. Later that day, GTH wired $187,750 from its account to Hong Kong pursuant to the wiring instructions it received from Northlink. GTH claims that, but for the assurance that the check had "cleared," it would not have forwarded the funds. On September 28, 2007, HSBC confirmed to GTH that the wire transfer had been consummated.

On October 2, 2007, HSBC received an EARNS notice from Citibank that the check was being dishonored as "RTM [return to maker] Suspect Counterfeit." An HSBC Branch Manager later contacted GTH, informing them that the check had been dishonored and returned as counterfeit. HSBC then revoked its provisional settlement and charged back GTH's account.

---

However, Citibank did not indicate that the check had been returned for insufficient funds, and there is no indication on the image of the check itself that it was returned for insufficient funds. Moreover, there is no evidence that HSBC treated the check as one that had been returned for insufficient funds.

4. The contents of this conversation are disputed, with HSBC having a different recollection of the conversation. For purposes of this summary judgment motion we must accept the version as proffered by GTH.

On October 17, 2007, GTH commenced this action against HSBC and Citibank sounding in conversion and conspiracy;[5] negligence and negligent misrepresentation by HSBC for failure to inform GTH that the check had been returned and dishonored on September 25, and for informing GTH over the phone that the funds had "cleared" and were available for disbursement; and negligence by Citibank for failing to detect that the check was counterfeit when it was originally presented to Image Processing North on September 24. Both Citibank and HSBC moved for summary judgment dismissing the complaint. Supreme Court ruled from the bench that HSBC had no duty under the Uniform Commercial Code (UCC) to inform GTH that the check had been returned "sent wrong" on September 25th, but rather that the dishonor actually took place when HSBC discovered the check was "Suspect Counterfeit." The court granted both HSBC and Citibank's motions and dismissed the complaint in its entirety.

The Appellate Division affirmed, holding that because the check had not been dishonored pursuant to UCC 4-212,[6] HSBC had no duty to inform GTH of the administrative return of the check. The court further held that, even if an HSBC employee misrepresented that the check had cleared, GTH's reliance on such a misrepresentation does not give rise to an action for negligent misrepresentation barring a fiduciary relationship, which, it said, does not exist between a bank and its customer. The court additionally found that if the principle of estoppel governs the case, GTH was in the best position to guard against the risk of a counterfeit check by knowing its client. The court finally stated that the personnel at Citibank were not in a position to discern whether the check was counterfeit and had no duty to inform HSBC at that time (see Greenberg, Trager & Herbst, LLP v HSBC Bank USA, 73 AD3d 571, 572 [1st Dept 2010]). We granted GTH leave to appeal (15 NY3d 707 [2010]) and now affirm.

---

**5.** GTH does not address its claims for conversion or conspiracy on this appeal and these claims appear to have been abandoned.

· **6.** UCC 4-212 (1) states that a collecting bank retains its right to charge back to a customer's account any provisional credit it has given if, upon an item's dishonor, the bank "returns the item or sends notification of the facts" by the midnight deadline. The midnight deadline "is midnight on [a bank's] next banking day following the banking day on which it receives the relevant item" (see UCC 4-104 [1] [h]).

## II.

The manner in which checks are processed by banks is governed by the Uniform Commercial Code. The UCC defines a "Depository Bank" as "the first bank to which an item is transferred for collection" (UCC 4-105 [a]). A "Collecting Bank" is defined as "any bank handling the item for collection except the payor bank" (UCC 4-105 [d]). A "Payor Bank" is defined as "a bank by which an item is payable as drawn or accepted" (UCC 4-105 [b]). An "Intermediary Bank" is defined as "any bank to which an item is transferred in course of collection except the depositary or payor bank" (UCC 4-105 [c]).

In a typical check presentation scenario, a bank customer deposits a check at its bank, the depositary bank. After deposit by the customer, the depositary bank either presents the check to the payor bank, or as is more commonplace, the depositary bank sends the check to a clearing house, which acts as an intermediary bank. Once the depositary bank sends the check to the intermediary bank, the depositary bank becomes a collecting bank. The intermediary bank then presents the check to the payor bank (at which time the intermediary bank is also a collecting bank). When the check is received by the payor bank, it either pays the check, returns the check or dishonors the check.

The UCC prescribes the duties the various banks owe to a depositor. A collecting bank must use ordinary care in presenting a check or sending a check for presentment, sending notice of dishonor or nonpayment or returning a check, and settling the check when the collecting bank receives final settlement from the payor bank (see UCC 4-202 [1]). A collecting bank has until midnight of the next banking day (its "midnight deadline" [UCC 4-104 (h)]) to take the above actions when receiving a check, notice of dishonor or final settlement of the check (see UCC 4-202 [2]). In other words, whenever a collecting bank receives a check from a depositor or notice or settlement from the payor bank it must act on it by midnight the next banking day.

A payor bank must, by its "midnight deadline" (UCC 4-104 [h]), pay the item (see UCC 4-302), return the item or send written notice of dishonor or nonpayment (see UCC 4-301). Final settlement of a check occurs when the payor bank has paid the item or fails to return the check, or sends written notice of dishonor or nonpayment of the check by its midnight deadline (see UCC 4-301 [1]; 4-302 [a]).

Pursuant to the Expedited Funds Availability Act (12 USC § 4001 *et seq.*), banks are required to make funds from a deposited check available for the depositor's withdrawal within certain short time periods (*see* 12 USC § 4002 [b] [1]). The purpose of the "[a]ct is to provide faster availability of deposited funds" (*Haas v Commerce Bank*, 497 F Supp 2d 563, 565 [SD NY 2007]). This availability is provisional and the collecting bank has the right to charge back the amount if the check is dishonored or the bank fails to receive a settlement for the check (*see* UCC 4-212).

In this case, GTH deposited the check into its account at HSBC on Friday, September 21, 2007. The next business day, Monday, September 24, 2007, HSBC, within its midnight deadline, sent the check to FRBP for presentation, as well as provisionally making the funds available to GTH. FRBP presented the check to Citibank on that same day. Citibank returned the check as "sent wrong," within its midnight deadline, on September 25, 2007. On September 26, 2007, within its midnight deadline, HSBC repaired the routing number of the check and sent it to the FRBS, which ultimately dishonored it as counterfeit on October 2, 2007.

### III.

GTH claims that Citibank was negligent in breaching its obligation to implement effective procedures for detecting counterfeit checks in that it failed to detect that the item was fraudulent when Citibank processed the check at Item Processing North. GTH notes the uncontroverted fact that on September 24, 2007, the day Citibank returned the check in question to the FRBP, Citibank returned at least six other checks, each in the identical amount of $197,750, which should have put Citibank on notice that something was amiss. Additionally, Citibank admits that the personnel who reviewed checks after being sent to the reject packet were not trained to determine if they were counterfeit. In short, it is clear that Citibank did nothing to determine if the check was counterfeit prior to returning it to FRBP.

To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part to plaintiff, breach of the duty and damages (*see Akins v Glens Falls City School Dist.*, 53 NY2d 325, 333 [1981]). Plaintiff alleges that Citibank owed it a duty to have procedures in place to detect counterfeit checks. For this proposition plaintiff cites

*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.* (74 NY2d 340 [1989]) and *Monreal v Fleet Bank* (95 NY2d 204 [2000]).

The duty of a payor bank (in this case Citibank) to a non-customer depositor of a check is derived solely from UCC 4-301 and 4-302. UCC 4-301 provides in pertinent part:

> "(1) Where an authorized settlement for a demand item . . . received by a payor bank . . . has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment . . . and before its midnight deadline it
>
> "(a) returns the item; or
>
> "(b) sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return."

UCC 4-302 (a) provides that a payor bank is liable for an item received by the payor bank if it "does not pay or *return the item* or send notice of dishonor until after its midnight deadline" (emphasis added). In this case, it is uncontroverted that Citibank returned the check to FRBP within its midnight deadline.

GTH's reliance on *Putnam* and *Monreal* is unavailing. Those cases dealt with claims by a customer of a payor bank for that payor bank's failure to exercise ordinary care with regards to forged checks drawn on the customer's account and examined the duties owed by a payor bank to its customers (*see Putnam*, 74 NY2d at 343-346; *Monreal*, 95 NY2d at 206-207). These duties are codified in article 4, part 4 of the UCC. Specifically, the duty of a payor bank to exercise ordinary care in paying a customer's item is found in UCC 4-406 (3).[7]

In this case, GTH is not a customer of Citibank and the duties codified in UCC 4-406 (3) are not applicable here. Moreover, there was never any payment made by Citibank on the check. In short, the only duty Citibank owed GTH was to pay the

---

7. UCC 4-406 (1) requires that a customer examine its bank statement to determine if there are any unauthorized signatures or alterations on any item and notify its bank promptly. UCC 4-406 (2) states that if the bank establishes that the customer failed to comply with subsection (1) with respect to an item, the customer is precluded from asserting against the bank its unauthorized signature or any alteration of the item. UCC 4-406 (3) provides: "The preclusion under subsection (2) does not apply if the customer establishes lack of *ordinary care* on the part of the bank in paying the item[ ]" (emphasis added).

check, return the check or send notice of dishonor of the check by midnight of the next banking day after receiving the check. It is uncontroverted that Citibank returned the check within its midnight deadline. Because GTH cannot establish any duty owing from Citibank that was breached, GTH's claims against Citibank were properly dismissed.

## IV.

As against HSBC, GTH alleges two causes of action. First, it alleges negligent misrepresentation as a result of HSBC informing GTH that the check had "cleared"[8] and the funds were available for transfer and second, it alleges negligence for failing to inform GTH and charge back the check on September 26th, when it was originally returned on September 25th by Citibank via FRBP.

As for the claim of negligent misrepresentation, "liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified" (*Kimmell v Schaefer*, 89 NY2d 257, 263 [1996]). "[T]he relationship between a bank and its depositor is one of debtor and creditor" (*Brigham v McCabe*, 20 NY2d 525, 530 [1967]; *see also Solicitor for Affairs of His Majesty's Treasury v Bankers Trust Co.*, 304 NY 282, 291 [1952]) and "an arm's length borrower-lender relationship . . . does not support a cause of action for negligent misrepresentation" (*Dobroshi v Bank of Am., N.A.*, 65 AD3d 882, 884 [1st Dept 2009]; *see also Aaron Ferer & Sons Ltd. v Chase Manhattan Bank, N.A.*, 731 F2d 112, 123 [2d Cir 1984]; *Korea First Bank of N.Y. v Noah Enters., Ltd.*, 12 AD3d 321, 323 [1st Dept 2004], *lv denied* 4 NY3d 710 [2005]; *River Glen Assoc. v Merrill Lynch Credit Corp.*, 295 AD2d 274, 275 [1st Dept 2002]; *FAB Indus. v BNY Fin. Corp.*, 252 AD2d 367, 367 [1st Dept 1998]). This is true even if there is a long-standing relationship between the customer and a particular bank employee (*see Manufacturers Hanover Trust Co. v Yanakas*, 7 F3d 310, 318 [2d Cir 1993]; *Bennice v Lakeshore Sav. & Loan Assn.*, 254 AD2d 731, 732 [4th Dept 1998]) or "if the parties are familiar or friendly" (*Call v Ellenville Natl. Bank*, 5 AD3d 521, 523 [2004]).

---

**8.** We note that GTH, in its own words, asked HSBC if the check had "cleared." "The term 'cleared' is not employed in the UCC and, as commonly used, is not the equivalent of 'final settlement' " (*Call v Ellenville Natl. Bank*, 5 AD3d 521, 524 [2d Dept 2004]).

GTH argues that, pursuant to UCC 4-201, HSBC was an agent of GTH during the period that HSBC was acting as a collecting bank for plaintiff. UCC 4-201 (1) provides, in pertinent part, that "prior to the time that a settlement given by a collecting bank for an item is or becomes final . . . the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional." GTH thus claims that pursuant to this agency relationship, HSBC owed a fiduciary duty to GTH. HSBC claims that it owed no fiduciary duty, and also relies on a waiver contained in the contract between GTH and HSBC. That contract contained the following provision:

### "BALANCE INFORMATION

"Balances may change frequently throughout a business day. You hereby waive any claim against the Bank based on representations made by the Bank, either orally or in writing to you, or your authorized person, or to any other party, regarding balance information."

Although an agent owes a duty to its principal to disclose all material facts that come to its knowledge regarding the scope of the agency (*see Kirschner v KPMG LLP*, 15 NY3d 446, 480 [2010]), the purpose of UCC 4-201 is not to impose a fiduciary duty on a collecting bank. We have interpreted the statute such that the use of the term "agent" means that the item and any inherent risk in that item remains with the depositor and not the collecting bank (*see Hanna v First Natl. Bank of Rochester*, 87 NY2d 107, 119 [1995] ["(a) collecting bank acts as the agent of its customer, and until such time as the collecting bank receives final payment, the risk of loss continues in the customer, the owner of the item"]; *Long Is. Natl. Bank v Zawada*, 34 AD2d 1016, 1017 [2d Dept 1970] ["(Section 4-201) operates to keep the risk of loss upon the owner of the item rather than the bank and gives to the depositary bank a right to reimbursement superior to the owner's rights to the proceeds and superior to the rights of the owner's creditors"]).

██ To resolve this case, we do not need to decide whether the relationship between GTH and HSBC would preclude all possible claims for negligent misrepresentation, but it is clear that the claim GTH asserts here cannot succeed, even accepting as true, as we must at this stage of the litigation, GTH's version of the conversation with the representative at HSBC. GTH's claim

is based on the alleged oral statement by the HSBC representative that the check had "cleared"—an ambiguous remark that may have been intended to mean only that the amount of the check was available (as indeed it was) in GTH's account. Reliance on this statement as assurance that final settlement had occurred was, under the circumstances here, unreasonable as a matter of law.

GTH's claim of negligence against HSBC alleges that HSBC owed a duty to GTH to inform it and charge its account back pursuant to UCC 4-212 (1) when the check was first returned marked "sent wrong" to HSBC on September 25th. GTH argues that the return of the check was a dishonor of the check, thereby triggering HSBC's duty to inform GTH and charge back its account by the midnight deadline (i.e., September 26th, the day before GTH wired the funds). UCC 4-212 (1) provides:

> "If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final."

However, the duty a collecting bank owes to a depositor is that of ordinary care in handling the item (see UCC 4-202). The UCC does not define "ordinary care," but it should be read as to have its normal tort meaning (see Putnam, 74 NY2d at 346). Other courts have determined that while "ordinary care [should] be [understood to have] its normal tort meaning, the realities of the modern banking system cannot be ignored in evaluating a bank's negligence" (United States Fid. & Guar. Co. v. Federal Reserve Bank of N.Y., 590 F Supp 486, 499 [SD NY 1984] [internal quotation marks omitted]). HSBC argues that when the check was returned "sent wrong," it was, what is known in the banking industry, an "administrative return." An "administrative return" occurs when the routing number on

the check is damaged or unreadable. When such a return occurs, the bank will do more research, repair the routing number and resubmit the check, which is what happened here. According to HSBC, this type of return is not a dishonor of the check. The check was, in HSBC's view, still being processed.

GTH argues that the UCC does not provide for an "administrative return" of a check and, therefore, the return of the check was a dishonor of the check. HSBC responds that it acted with "ordinary care" because treating a check returned in this manner as an "administrative return," repairing the routing number and re-presenting the check is the custom and practice of the banking industry (*see Trimarco v Klein*, 56 NY2d 98, 105-106 [1982]). HSBC proffered the affidavit of its Assistant Vice-President and First Shift Manager in the Exceptions Processing Department of HSBC as evidence that "administrative returns" occur periodically in the banking industry and are dealt with by repairing the routing number and re-presenting the check. The record demonstrates that HSBC acted with ordinary care (*see Putnam*, 74 NY2d at 347 ["by showing that it acted in accordance with general banking rules or practices, a bank can ensure that its conduct at least prima facie meets an ordinary care standard"]). GTH, by contrast, offered no evidence in support of its claim that the bank acted unreasonably (*see id.* at 346 ["a customer could prove a bank lacked ordinary care by presenting any type of proof that the bank failed to act reasonably"]). GTH relies on HSBC's internal document that noted that the check was returned for insufficient funds as evidence the check was dishonored on September 25th. However, the courts below properly accepted HSBC's explanation that the document stating the check was returned for insufficient funds was a clerical error. In sum, because GTH offered no proof that HSBC failed in its duty to exercise ordinary care in the handling of the check, and no issues of fact remain, the claim for negligence against HSBC likewise fails.

## V.

Finally, GTH argues that it should prevail against both defendants under the theory of equitable estoppel. This argument is unavailing. Under the doctrine of equitable estoppel, when innocent parties suffer from the acts of a third person, the party that enabled the third person must bear the loss (*see Bunge Corp. v Manufacturers Hanover Trust Co.*, 31 NY2d 223, 228 [1972]). Here, neither Citibank nor HSBC breached any duty owed to GTH.

GTH argues that the banks were in the best position to determine that the check was counterfeit. However, the Appellate Division held, and we agree, that "[GTH] was in the best position to guard against the risk of a counterfeit check by knowing its 'client' " (*Greenberg*, 73 AD3d at 572). Additionally,

> "the UCC has the objective of promoting certainty and predictability in commercial transactions. By prospectively establishing rules of liability that are generally based not on actual fault but on allocating responsibility to the party best able to prevent the loss by the exercise of care, the UCC not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution" (*Putnam*, 74 NY2d at 349).

The UCC is clear that, until there is final settlement of the check, the risk of loss lies with the depositor (*see Hanna*, 87 NY2d at 119). Final settlement of a check occurs when the payor bank has:

> "(a) paid the item in cash; or

> "(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or

> "(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or

> "(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement" (UCC 4-213 [1]).

It is uncontroverted that since none of the above actions occurred in this case prior to October of 2007, the risk remained with GTH and HSBC retained the right to charge back plaintiff's account pursuant to UCC 4-212. Since GTH cannot establish that defendants breached any duty owed, the courts below have correctly determined that no triable issues of fact exist and properly awarded summary judgment in favor of the defendant banks.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting in part). I believe that HSBC is not entitled to summary judgment on GTH's negligent misrepresentation claim.

Under New York's Uniform Commercial Code, "[i]f a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final," the bank may revoke the settlement and charge back the amount of any credit given for the item to the customer's account (UCC 4-212 [1]). "The right to charge-back is not affected by . . . failure by any bank to exercise *ordinary care* with respect to the [check] *but any bank so failing remains liable*" (*id.* at 4-212 [4] [b] [emphasis supplied]). Thus, a bank has a duty to exercise ordinary care when dealing with its customers (*Aikens Constr. of Rome v Simons*, 284 AD2d 946, 947 [4th Dept 2001]). The term "ordinary care" is used with its normal tort meaning and not in any special sense relating to bank collections. A customer may prove a bank "lacked ordinary care by presenting any type of proof that the bank failed to act reasonably" (*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340, 346 [1989]). Further, section 4-103 (1) states that "[t]he effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure."

In this case, GTH alleges that on September 27, 2007, David A. Trager, a partner at GTH, telephoned his contact at HSBC, Frances Scott, to inquire about the status of the Citibank check. Trager and Scott had a five-year banking relationship, whereby Trager would call Scott to confirm that checks deposited into GTH's trust account had cleared and were available for disbursement. Scott informed Trager that the Citibank check had "cleared" and that the funds were available to be wired to another account. Relying in good faith on that statement, Trager asked Scott to wire proceeds of the check, which she did.

HSBC makes much of the fact that the word "cleared" is not found in the UCC and the majority finds it to be ambiguous. However, UCC 1-205 entitled "course of dealing and usage of trade," defines "usage of trade" as encompassing "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question" (UCC

1-205 [2]). The term "cleared" is used liberally in the banking business. Indeed, the Federal Trade Commission in a bulletin addressed to consumers states that "[i]t's best not to rely on money from *any* type of check . . . unless you know and trust the person you're dealing with or, better yet—*until the bank confirms that the check has cleared*" (Federal Trade Commission, *FTC Facts for Consumers, Giving the Bounce to Counterfeit Check Scams*, Jan. 2007, available at http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre40.pdf, cached at http://www.nycourts.gov/reporter/webdocs/cre40.pdf [emphasis added]). Therefore, I disagree with the majority's position that relying on this statement was unreasonable as a matter of law (*see* majority op at 580).* I suspect many business professionals would have done the same thing as Trager.

Viewing the facts in the light most favorable to GTH, which we are required to do on this motion for summary judgment, GTH raises questions of fact as to whether HSBC failed to exercise ordinary care when Scott misrepresented the status of the check to Trager (*see JP Morgan Chase Bank, N.A. v Pinzler*, 28 Misc 3d 1214[A], 2010 NY Slip Op 51324[U] [Sup Ct, NY County 2010]; *JP Morgan Chase Bank, N.A. v Cohen*, 26 Misc 3d 1215[A], 2009 NY Slip Op 52725[U] [Sup Ct, Albany County 2009]).

Counterfeit check scams are pervasive. That Citibank could not recognize one of its own checks as counterfeit is testament to the seriousness of this problem within the banking industry. It is no answer that Citibank and HSBC seemed to stumble along over a period of 10 days resulting in one of their customers being bilked out of $187,750. This problem has long been known to the banks and a mere recitation of their normal practices does not, in my view, establish the appropriate standard of care in this day and age and certainly not their entitlement to summary judgment.

Equally unavailing is HSBC's claim that the negligent misrepresentation claim must fail because GTH waived all claims

---

* If the term "cleared" means anything in common banking usage, it is that final settlement has occurred (*see* Black's Law Dictionary [9th ed 2009], clear [defining the term as it relates to a bank as "to pay (a check or draft) out of funds held on behalf of the maker <the bank cleared the employee's check>"; defining the term as it relates to "a check or draft" as "to be paid by the drawee bank out of funds held on behalf of the maker <the check cleared yesterday>"]).

concerning GTH's balance information. Even if GTH waived such claims, this is not a debate about who said what to whom about an account balance. Rather, the issue is whether HSBC told GTH that the check had cleared and whether GTH could have relied on HSBC's representations to that effect.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and JONES concur with Judge CIPARICK; Judge PIGOTT dissents in part in a separate opinion.

Order affirmed, with costs.