Leibensperger, Edward P., J.
INTRODUCTION
Plaintiff “Wolfgang” Chao Du (Du) brings this action against Bank of America (Bank) and Alieu Sheriff (Sheriff) to recover a $40,000 loss resulting from a dishonored check. Du asserts claims against Sheriff, the payee and indorser of the check. (Counts I and II.) Counts III to VI are alleged against the Bank under multiple theories based on the Bank initially giving Du credit for the check but then charging Du’s account when the check was dishonored. Specifically, Du alleges that the Bank, as an indorser of the check, is liable for the $40,000 (Count III), the Bank breached a fiduciary duly by negligently misrepresenting the status of the $40,000 deposit (Count IV), and the Bank breached its contract with Du (Count V). Count VI is in the nature of a request for relief. Du alleges that the Bank “threatened” to take various steps in connection with collecting the deficiency in Du’s account. The Bank moves to dismiss the complaint, arguing that its conduct was permitted by the Federal Expedited Funds Availability Act and provisions of the Massachusetts Uniform Commercial Code (G.L.c. 106). For the reasons stated below, the Bank’s motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
The following facts are taken from the complaint. On or about September 19, 2011, Sheriff gave Du a check for $40,000, payable to Sheriff, drawn on Flagstar Bank, MI, from the account of McKechnie Vehicle Components. Later that day, Du and Sheriff went to a Bank branch in Boston for the purpose of depositing the check in Du’s account. After a bank branch employee verified both of their identities,[2] Sheriff indorsed the check for deposit into Du’s account. When Du deposited the check, the Bank recorded a provisional settlement in the amount of $40,000 and credited Du’s account. The Bank issued a receipt to Du identifying the provisional settlement as a “Counter Credit.” The Bank provided no explanation, in writing or oral, describing the terms of a “Counter Credit.”
Later that evening, Du accessed his account online through the Bank’s website. The website displayed the $40,000 deposit as “Complete” and marked with a green “C” in the same manner as previous completed transactions in the account.
The next day Sheriff asked Du to make a wire transfer from his Bank account to an account in Dubai in the amount of $38,300. Sheriff instructed Du to leave $2,700 in his Bank account to partially repay previous loans Du had made to Sheriff, and promised to repay the rest after Du made the transfer. Du made the transfer. Du insists he would not have done so if he had known that the $40,000 was only a provisional settlement and not a completed deposit.
The following day, September 21, Flagstar Bank dishonored the check as stolen or forged, and returned it to the Bank. The Bank, in turn, returned it to Du that same day. The Bank revoked the provisional settlement, charging Du’s account for $40,000, and leaving Du’s account with a negative balance of over $38,000.
DISCUSSION
Standard
The Bank moves to dismiss Du’s complaint for failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Mass.R.Civ.P. 12(b)(6), the plaintiff must plead “factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Although the standard does not require a complaint to set out detailed factual allegations, “a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.” Iannacchino, 451 Mass. at 636 (quoting Bell Atl. Corp., 550 U.S. at 555). The factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that the allegations in the complaint are true. Id. The court must accept as true the factual allegations of the complaint and draw every reasonable inference in favor of the plaintiff. Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 676 (2011).
Analysis Provisional Settlements and Right of Chargeback
The Federal Expedited Funds Availability Act (EFAA or Act) was enacted to shorten the time period by which funds became available for withdrawal after they have been deposited into banks. See 12 U.S.C. §4001 et seq.; see also Lynch v. Bank of America, N.A., 493 F.Sup.2d 265, 267 (D.R.I. 2007) (“goal of EFAA is to reduce time between deposit and availability of funds”). Pursuant to the statute, the Board of Governors of the Federal Reserve System issued Regulation CC to promulgate rules to carry out the Act. See 12 U.S.C. §4008(a) (directing Board to prescribe regulations); 12 C.F.R. §§229.1-229.41 (Regulation CC). Regulation CC requires depository banks to make the funds represented by a deposited item available for withdrawal by a depositor within specific time periods. The time period within which the bank must make funds deposited by check available depends on the type of the check deposited. See 12 C.F.R. §§229.10(c) (requiring next day availability for funds deposited by certain low-risk checks); 229.12(b) (requiring funds deposited by local checks and certain other checks to *339 be made available not later than the second business day); 229.12(c) (requiring funds deposited by non-local checks to be made available within five business days).
The Act allows, but does not require, a bank to make funds available for withdrawal earlier than the regulations proscribe. 12 U.S.C. §4006(c)(1) (no provision of EFAA shall be construed as “prohibiting a depositoiy institution from making funds available for withdrawal in a shorter period of time than the period of time required by this chapter”); Lynch, 493 F.Sup.2d at 268 (bank was in “full compliance” with EFAA when it made funds available one day earlier than required under Regulation CC). The EFAA also preserves a bank’s right to revoke any provisional settlement and to charge back the depositor’s account for the amount of any revoked check. Id. §4006(c)(2).
The UCC, as codified in Massachusetts, also establishes standards for bank deposits and collections. See G.L.c. 106, §4-201 et seq. It provides that a settlement given for an item by a collecting bank before the settlement becomes final is provisional. It is provisional “even though credit given for the item is subject to immediate withdrawal as of right or in fact withdrawn.” Id. at §4-201 (a). Further, “(i]f a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor ... or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, [and] charge-back the amount of any credit given for the item to its customer account” so long as the bank timely notifies the customer of the facts. The UCC requires a collecting bank to send notice to its customer of the dishonor or nonpayment of an item after learning that the item has not been accepted before its “midnight deadline." G.L.c. 106, §4-202(b). The “midnight deadline” is defined as “midnight on its next banking day following the banking day on which it receives the relevant item or notice.” Id. §4-104(10).
The provisions of the EFAA and UCC explicitly authorized the Bank to make a provisional settlement of $40,000 in response to Du’s deposit and preserve its right to charge back that amount at any time before settlement is final. See Lynch, 493 F.Sup.2d at 268-69 (“EFAA preserves a depositoiy institution’s right to revoke, charge back, or request a refund for an uncollectible deposit"). Furthermore, the Bank indisputably complied with the midnight deadline rule by returning the check to Du on the same day that Flagstar Bank returned it to the Bank. See Lynch, 493 F.Sup.2d at 269 (“as long as depositoiy institutions comply with its notice provisions, EFAA does not make banks liable for their customers’ checks”). The Bank’s right to make provisional settlements and charge back any returned items is not dispositive, however, because Du alleges that the Bank negligently misrepresented that his deposit was complete. Accordingly, Du’s theories of liability must be addressed to determine whether he has stated a viable claim.
Indorsement (Count III)
An indorsement is “a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser’s liability . . . unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement.” G.L.c. 106, §3-204(a). A word, mark, or symbol executed by a person with the intention to authenticate a writing is sufficient to constitute a signature. Id. §3-401(b). Generally, if an instrument, such as a check, is dishonored, the indorser is obliged to pay the amount due on the instrument. Id. §3-415(a).
Under the EFAA, a depositoiy bank is required to follow specific guidelines when indorsing a check. 12 U.S.C. §4008(b)(5)(A). The indorsement must contain the bank’s nine-digit routing number, set off by an arrow at each end of the number, the bank’s name or location, and the indorsement date. 12 C.F.R. Pt. 229, Appendix D(1)(i); see also USAA Inv. Mgmt Co. v. Fed. Reserve Bank of Boston, 906 F.Sup. 770, 777-78 (D.Conn. 1995) (describing Appendix D’s indorsement standards). The regulations also require the indorsement to be placed on the back of the check in dark ink. 12 C.F.R. Pt. 229, Appendix D(1)(iii); USAA Inv. Mgmt Co., 906 F.Sup. at 777-78. In this case, the only markings the Bank placed on the check were located in the upper left corner on the front of the check. The markings did not include the bank’s routing number, the date, or the location of the bank, and, therefore, do not constitute an indorsement as set forth in Regulation CC. In this case, the “accompanying words” and “place of the signature” indicate that the markings were made for a purpose other than indorsement — namely, to verify the identifications of Du, the Bank’s customer, and Sheriff, the person to whom the check was made payable. See G.L.c. 106, §3-204(a). Accordingly, Du’s indorsement claim fails, and the Bank’s motion to dismiss Count III is allowed.
Breach of Fiduciary Dufy/Negligent Misrepresentation (Count IV)
It is “well settled” that the relationship between a depositor and a bank is generally “that of debtor and creditor.” Krinsky v. Pilgrim Trust Co., 337 Mass. 401, 405 (1958). Du notes, however, that the Bank acted as his agent pursuant to the governing UCC provisions and, as such, allegedly owed him a fiduciary duty. The UCC provides that “before the time a settlement given by a collecting bank for an item is or becomes final, the bank, with respect to the item, is an agent or a subagent of the owner of the item.” G.L.c. 106, §4-201(a). The bank’s agency status continues until the settlement for the item becomes final, at which time the relationship changes back into that of a creditor-debtor. Id., UCC Comment 4. The purpose of UCC 4-201, *340 however, is not to impose a fiduciary duly on a collecting bank. See Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 N.Y.3d 565, 579 (2011). Rather, the use of the term “agent" in that provision has been interpreted only to establish that “the item and any inherent risk in that item remains with the depositor and not the collecting bank.” Id.; see also G.L.c. 106, §4-201, UCC Comment 4 (one of the results that flow from the agency status of a collecting bank is that the “risk of loss continues in the owner of the item rather than the agent bank"). Whether the relationship between Du and the Bank was one of creditor-debtor or principal-agent, the Bank did not owe any fiduciary duty to Du. Thus, Du’s claim for breach of fiduciary duty fails.
Although Du’s complaint does not specifically include a claim labeled “Negligent Misrepresentation,” the allegations in the complaint, specifically under Count IV, are sufficient to state such a claim. In order to recover on a claim of negligent misrepresentation, a plaintiff must prove that the defendant (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information. Gossels v. Fleet National Bank, 453 Mass. 366, 371-72 (2009). Here, Du alleges that the Bank, in the course of its business, informed Du, via the Bank’s website and the issuance of the Counter Credit, that his deposit was completed. But for this representation, Du argues, he would not have made the wire transfer to Dubai for $38,000 and would not be indebted to the bank for the same. The Bank argues that Du’s reliance on the provisional settlement, “Counter Credit” receipt, and online “C” is unreasonable as a matter of a law, relying on Greenberg, 17 N.Y.3d at 580 (holding that plaintiffs reliance on bank’s oral statement that check had “cleared” as assurance that final settlement had occurred was unreasonable as a matter of law).
Under the UCC, a collecting bank must exercise ordinary care in presenting a check or sending a check for presentment, in returning a check, and in settling a check when the collecting bank receives final settlement from the payor bank. G.L.c. 106, §4-202(a); see also Greenberg, 17 N.Y.3d at 575. The right of chargeback is not affected by the “failure of any bank to exercise ordinaiy care with respect to that item, but a bank so failing remains liable.” Id. §4-214(d)(2); see also Greenberg, 17 N.Y.3d at 583 (Pigott, J., dissenting in part).
In Greenberg, the plaintiff inquired into the status of a particular deposit and was told that the check had “cleared.” 17 N.Y.3d at 580. As it turns out, that remark was only intended to mean that the amount of the check was available in the plaintiffs account, and the check was later dishonored. Id. at 573. The bank then revoked the provisional settlement and charged back the plaintiffs account. Id. The plaintiff brought suit, alleging negligent misrepresentation. Id, at 574. In granting summary judgment to the bank, the court held that the plaintiffs reliance on a bank employee’s oral statement that the check had “cleared” as assurance that final settlement had occurred was unreasonable as a matter of law. Id. at 580.
In a dissenting opinion, however, one member of the court (Pigott, J.) disagreed with the majority’s position that the plaintiffs reliance on the statement that the check had cleared was unreasonable as a matter of law. Id. at 584. The dissent noted that, under the UCC’s “ordinaiy care” standard, a customer may prove that a bank lacked ordinaiy care by presenting proof that the bank was negligent. The dissent, in viewing the facts in a light most favorable to the plaintiff, opined that the plaintiff raised questions of fact as to whether the defendant bank failed to exercise ordinary care when representing the status of the check. Id, at 584. Accordingly, the dissent argued that the bank was not entitled to summary judgment on the negligent misrepresentation claim.
Here, the case is at the motion to dismiss stage rather than summary judgment. Du has pleaded enough factual allegations to plausibly suggest an entitlement to relief with respect to the negligent misrepresentation claim. The Bank provided Du with information that he understood to indicate that the check at issue had reached final settlement. Du would not have made the subsequent wire transfer had he known the deposit was not completed, and thus relied on this representation to his detriment in sustaining a $40,000 loss. Thus, Du raises a valid issue of whether the Bank failed to exercise ordinaiy care when it issued him a “Counter Credit” receipt and electronically marked his deposit with a green “C” through its website despite the fact that the settlement was only provisional. At a later stage of the case, it is open to the Bank to rebut the allegations of negligence or justifiable reliance. But at the pleading stage, the complaint states a claim for negligent misrepresentation.
Contract Claim (Count V)
Du, as an account holder at the Bank, entered into a contract with the Bank called the “Depositoiy Agreement.” Du argues that the bank breached this contract. The Depositoiy Agreement, however, explicitly provides the Bank with the right to make provisional settlements and charge back any dishonored items. The Depositoiy Agreement provides that “you [the depositor] are responsible for returned items.” Depositoiy Agreement at p. 17. The contract further explains:
In many cases, we [the Bank] make funds from your deposited checks available to you sooner than we are able to collect the checks . . . even though we make funds from a deposited check available to you and you withdraw the funds, you are still responsible for problems with the deposit. If a check you deposited is returned to us unpaid for any reason, *341 you will have to repay us and we may charge your account for the amount of the check, even if doing so overdraws your account.
Id. at 18-19. Accordingly, the Bank did not breach the Depositoiy Agreement by making a provisional settlement with respect to Du’s check and subsequently charging the $40,000 back to Du’s account.
Alternatively, Du argues that, even if there was no breach, the Depositoiy Agreement constitutes an unconscionable adhesion contract that should not be enforced against him. Du contends that the contract is unconscionable because it places all liability stemming from deposits on the customer regardless of the Bank’s conduct with respect to that deposit. Unconscionability is determined on a case-by-case basis, “with particular attention to whether the challenged provision could result in oppression and unfair suiprise to the disadvantaged party and not to allocation of risk because of superior bargaining power.” Waters v. Min Ltd., 412 Mass. 64, 68 (1992)
In this case, the Depositoiy Agreement is not a contract “such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.” Id. at 66 (quoting Hume v. United States, 132 U.S. 406, 411 (1889)). The contract is entirely consistent with federal and UCC law. As a result, Du’s contract claim fails and the Bank’s motion to dismiss Count v. is allowed.
Collection Conduct (Count VI)
In this count, plaintiff alleges various “threats” by the Bank with respect to its efforts to collect the deficiency in Du’s account, such as threatening to send the account for collection and reporting the delinquency to credit bureaus. It is not pleaded that any specific action has been taken or that the Bank has breached a legal duty. This count fails to state a claim and must be dismissed.
CONCLUSION
For the foregoing reasons, the Bank’s motion to dismiss Counts III, V, and VI is ALLOWED. The Bank’s motion to dismiss to Count IV to the extent that it alleges a claim for breach of fiduciaiy duty is ALLOWED, but the motion to dismiss Count IV is DENIED to the extent that it alleges a claim for negligent misrepresentation.

 In the upper left-hand corner of the check, a notation reads “verified both IDs in pers.” Compl. Ex. A.